# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**JESSE R. POAG**
Newburgh, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ELLEN H. MEILAENDER**
Deputy Attorney General
Indianapolis, Indiana

**FILED**

May 30 2013, 9:16 am

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JEFFREY EMBREY, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 82A01-1211-CR-494 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE VANDERBURGH CIRCUIT COURT
The Honorable Carl A. Heldt, Judge
The Honorable Kelly E. Fink, Magistrate
Cause No. 82C01-1203-FB-401

**May 30, 2013**

**OPINION - FOR PUBLICATION**

**BRADFORD, Judge**

Appellant-Defendant Jeffrey Embrey was arrested at a home in Evansville on the afternoon of March 22, 2012, after officers with the U.S. Marshall's Fugitive Task Force executed a warrant on an individual believed to be residing in the home. During a protective sweep and subsequent search of the home, officers found evidence of methamphetamine manufacture. Officers also found evidence that Embrey and a child resided in the home. Embrey was subsequently charged with and convicted of Class B felony dealing in methamphetamine, Class C felony neglect of a dependent, and Class D felony maintaining a common nuisance.

On appeal, Embrey contends that the trial court abused its discretion in admitting certain evidence under the business records exception to the hearsay rule. Embrey also contends that the evidence is insufficient to sustain his conviction for Class C felony neglect of a dependent. Concluding that the trial court acted within its discretion in admitting the challenged evidence and that the evidence is sufficient to sustain Embrey's conviction for Class C felony neglect of a dependent, we affirm.

## FACTS AND PROCEDURAL HISTORY

On the afternoon of March 22, 2012, officers with the U.S. Marshall's Fugitive Task Force executed a felony arrest warrant on Kenneth Cavanaugh at a home located in Evansville. Prior to approaching the home, the officers performed surveillance and saw Embrey cleaning or working on a car in the driveway and going in and out of the home. Officers also saw Mary Cavanaugh arrive at the home. Officers soon thereafter approached the home and knocked on the front door.

2

After a short period of time, Mary answered the door and confirmed that Kenneth was inside. Mary also indicated that her "son, his wife or girlfriend, and *their* child" were inside the home. Tr. p. 15 (Emphasis added). Eventually, Kenneth came out of the home and was taken into custody. As officers conducted a protective sweep of the home, they found Embrey and Sadie Stewart coming out of a room holding a child. The child was identified as Jayden Embrey. Embrey's grandfather subsequently confirmed that Embrey has a child named Jayden Embrey.

During the protective sweep of the home, officers saw a coffee filter with white powder in it sitting in plain view on a desk in the bedroom. Kenneth refused to give the officers permission to search the home without a warrant. The officers then sought and received a search warrant before completing a more extensive search of the home.

While executing the search warrant, officers found items used during the manufacturing of methamphetamine throughout the home. Officers found a plastic baggy and tubing on a table in the living room. They found salt, numerous coffee filters, a coffee grinder with powder inside, a blender with white powder inside, and a container of ammonium nitrate pellets in open kitchen cabinets. Officers found a cooler containing two bottles of Coleman camp fuel and a water jug, a black box containing a one-liter reaction vessel bottle with white residue, clear plastic tubing, and a glass jar containing a clear liquid solvent in a small utility closet. Officers also found a coffee filter box, empty boxes of Claritin-D, and coffee filters smelling of organic solvent sealed inside a zip lock bag in the trash. Outside the home, officers found three surveillance cameras attached to different

3

locations on the home.

While searching the bedroom, Officers found numerous paraphernalia pipes and a corner bag with white powder in an open drawer; a digital scale with white residue on a table; a coffee filter with white residue; a safe containing Clariton-D blister packs, other loose pseudoephedrine pills, and lithium batteries; a razor blade, credit cards, and a straw on a plate with white residue; a propane torch; a marijuana bong; and a jar of numerous used coffee filters with residue. The jar of used coffee filters was sitting on a shelf in the closet next to a child's toy. In addition, officers found a computer on a desk in the bedroom that had an article up on the screen entitled "Secrets of Methamphetamine Manufacture." Tr. p. 56. In total, all of the items necessary for the manufacture of methamphetamine except for sulfuric acid were found in the home.

Subsequent testing revealed that the corner plastic baggy found in the bedroom contained 0.45 grams of methamphetamine. The used coffee filters in the zip lock bags in the trash contained methamphetamine residue. The powder on the coffee grinder was identified as ephedrine and/or pseudoephedrine. The fourteen whole pills and the two partial pills found in the safe contained ephedrine and/or pseudoephedrine.

In addition to the evidence relating to the manufacturing of methamphetamine, officers found both adult and children's clothing, a child's pillow, toys, and a diaper bag in the home. In the bedroom, officers found a prescription bottle with Embrey's name, a CVS pharmacy receipt for a prescription belonging to Embrey, and a couple pieces of mail addressed to Embrey at the address of the home. Officers also found paperwork from a

4

dentist listing the address of the home as Embrey's address.

On March 27, 2012, the State charged Embrey with Class B felony dealing in methamphetamine,[1] Class C felony neglect of a dependent,[2] and Class D felony maintaining a common nuisance.[3] A jury trial was held on August 13 and 14, 2012, after which the jury found Embrey guilty as charged. On October 11, 2012, the trial court sentenced Embrey to an aggregate ten-year term of incarceration. This appeal follows.

## DISCUSSION AND DECISION

### I. Admission of Evidence

Embrey contends that the trial court erred in admitting the National Precursor Log Exchange ("NPLEx") report documenting the purchases and attempted purchases of ephedrine and pseudoephedrine by Embrey in the month preceding his arrest. Specifically, Embrey claims that the trial court erred in admitting the NPLEx report because it was inadmissible hearsay. For its part, the State argues that the trial court properly admitted the NPLEx report because it was a business record that fell under the business record exception to the hearsay rule.

> We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Iqbal v. State*, 805 N.E.2d 401, 406 (Ind. Ct. App. 2004). An abuse of discretion occurs if a trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.* However, the improper admission of evidence is harmless error when the conviction is supported by substantial independent evidence of guilt sufficient to satisfy the reviewing court that there is no substantial likelihood that the questioned evidence contributed to the conviction. *Hernandez v. State*, 785 N.E.2d 294,

---

[1] Ind. Code § 35-48-4-1.1(a)(1).
[2] Ind. Code §§ 35-46-1-4(a)(1) and (b)(1)(B).
[3] Ind. Code § 35-48-4-13(b)(2).

5

300 (Ind. Ct. App. 2003), *trans. denied.*

*Ware v. State*, 816 N.E.2d 1167, 1175 (Ind. Ct. App. 2004).

## A. Historical Background

In *In re Termination of Parent-Child Relationship of E.T.*, 808 N.E.2d 639 (Ind. 2004), the Indiana Supreme Court provided a historical background of the hearsay rule and the business record exception to the hearsay rule, stating the following:

> Every second-year law student and perhaps first-year law student as well, depending on the law school curriculum, can recite the general definition of hearsay: "an out of court assertion offered in court to prove the truth of the matter asserted." Also well known is the corollary that absent an exception to the rule, hearsay is inadmissible as evidence. Not so universally recited or well known are the numerous exceptions to the rule. Indeed precisely because of its numerous exceptions, some scholars have argued in favor of abolishing the rule altogether. *See, e.g.*, Paul S. Milich, *Hearsay Antinomies: The Case for Abolishing the Rule and Starting Over*, 71 Or. L.Rev. 723 (1992); Eleanor Swift, *Abolishing the Hearsay Rule*, 75 Cal. L.Rev. 495 (1987). In any event, the exceptions to the rule have been generally based upon some combination of the unavailability of the declarant, the reliability of the declaration, or the presumed inefficiency of any possible cross-examination. *See generally* 5 John Henry Wigmore, *Evidence* §§ 1420–27 (Chadbourn rev.1974); 2 John W. Strong, *McCormick on Evidence* § 253 (5th ed. 1999).
>
> An outgrowth of the English common law "shop book" rule, the business records exception is one of the oldest exceptions to the rule against the admissibility of hearsay. In England, the custom emerged of courts receiving the shop books of businessmen as evidence of goods sold or services rendered. The purpose was to circumvent the prohibition against a party appearing as its own witness. By 1832, the "shop book" rule was firmly grounded in English common law, and its scope included all entries made in the ordinary course of business. *McCormick on Evidence* 285.
>
> Today, either by statute, court rule, or both, every American jurisdiction has adopted rules governing the admission of business records. *See* 5 Wigmore, *Evidence* § 1561a, at n. 6 (Supp.1991).

808 N.E.2d 639, 641-42 (Ind. 2004).

### B. The Business Record Exception to the Hearsay Rule

The business record exception to the hearsay rule is codified at Indiana Rule of Evidence 803(6), and provides as follows:

> **Records of Regularly Conducted Business Activity**. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony or affidavit of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate a lack of trustworthiness. The term "business" as used in this Rule includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

"Business records are an exception to the hearsay rule because they are imbued with independent indicia of trustworthiness." *Williams v. Hittle*, 629 N.E.2d 944, 947 (Ind. Ct. App. 1994), *trans. denied*. "These indicia are that the business establishes a routine of record-making, that the record is made by one with a duty to report accurately, and that the business relies upon that record in carrying out its activities." *Id*. "The fact that the business record is prepared by a party independent of the business does not negate these factors." *Id*. So long as the "initial informant has personal knowledge of a fact, that fact may be repeated by an infinite number of people as long as each person in the chain is acting in the regular course of business." *Id*. at 948. "The recorders themselves need not have first-hand knowledge." *Id*. Moreover, "[t]he sponsor of an exhibit need not have personally made it, filed it, or have firsthand knowledge of the transaction represented by it." *Boarman v. State*, 509 N.E.2d 177, 181 (Ind. 1987). "The sponsor need only show that the exhibit was part of

certain records kept in the routine course of business and placed in the records by one who was authorized to do so, and who had personal knowledge of the transaction represented at the time of entry." *Id.*

### C. Statutory Requirement to Document the Purchase of Ephedrine and Pseudoephedrine

Indiana Code section 35-48-4-14.7(c)[4] sets forth certain requirements that a retailer must meet if the retailer sells ephedrine or pseudoephedrine. One of these requirements is that the retailer maintains records of all sales of a nonprescription product containing ephedrine or pseudoephedrine. These records should include: (1) the name and address of each purchaser; (2) the type of identification presented; (3) the governmental entity that issued the identification; (4) the identification number; and (5) the ephedrine or pseudoephedrine product purchased, including the number of grams the product contains and the date and time of the transaction. In addition to maintaining these records, Indiana Code section 35-48-4-14.7(c)(5) requires that before a retailer may complete the sale of an over-the-counter product containing pseudoephedrine or ephedrine, the retailer *shall*

> electronically submit the required information to the National Precursor Log Exchange (NPLEx) administered by the National Association of Drug Diversion Investigators (NADDI), if the NPLEx system is available to retailers in the state without a charge for accessing the system. The retailer may not complete the sale if the system generates a stop sale alert.

If, for some reason, the retailer experiences mechanical or electronic failure of the electronic

---

[4] The Indiana General Assembly recently amended Indiana Code section 35-48-4-14.7. These amendments will take effect on July 1, 2013. It is worth noting, however, that none of the amendments adopted by the General Assembly effect the substance of the portions of the statute relevant to the instant appeal.

8

sales tracking system and is unable to comply with the requirements of Indiana Code section 35-48-4-14.7(c)(5), the retailer *shall* maintain a written log or an alternative electronic recordkeeping mechanism until the retailer is able to comply with requirements of Indiana Code section 35-48-4-14.7(c)(5). Ind. Code § 35-48-4-14.7(c)(6). Indiana Code section 35-48-4-14.7(i) imposes criminal liability for a knowing or intentional failure to comply with the requirements of Indiana Code section 35-48-4-14.7(c).

Indiana Code section 35-48-4-14.7(k) sets forth requirements that apply to the NPLEx reports. This section provides that (1) the information contained in the NPLEx report may be shared only with law enforcement officials; (2) a law enforcement official must be permitted to access Indiana transaction information maintained in the NPLEx for investigative purposes; (3) NADDI may not modify sales transaction data that is shared with law enforcement officials; and (4) at least one time per week, NADDI shall forward Indiana data contained in the NPLEx, including data concerning a transaction that could not be completed due to the issuance of a stop sale alert, to the state police department.

### D. Analysis

In arguing that the trial court erred in admitting the NPLEx report documenting his purchases and attempted purchases of ephedrine and pseudoephedrine in the month preceding his arrest, Embrey acknowledges that James Acquisto, the custodian of records for Appriss, Inc., which maintained the NPLEx log, had knowledge of the fact that the information was recorded according to Appriss's data collection and business practices. Embrey claims, however, that the NPLEx report should not have been admitted because Acquisto did not

9

have firsthand knowledge of the recorded transactions themselves. We disagree.

Again, Indiana law requires that retailers selling non-prescription ephedrine and pseudoephedrine electronically submit a record of all sales of products containing ephedrine and pseudoephedrine to the NPLEx as part of the retailer's regularly conducted business activity. *See* Ind. Code § 35-48-4-14.7(c). The retailer submits the record by electronically scanning both the identification card of the individual making the purchase and the bar code of the product being purchased. This submission must be made before the sale of the items can be completed and the retailer is not permitted to complete the sale if the system generates a "stop sale" alert. *See id.* Any knowing or intentional failure to make the required submission may subject one to criminal penalties. *See* Ind. Code § 35-48-4-14.7(i).

The computerized NPLEx database is maintained by Appriss, Inc. The records are generated at the time the purchaser's information is scanned into the system. Once a purchase has been recorded, the information contained within the NPLEx database may only be shared with law enforcement officials. *See* Ind. Code § 35-48-4-14.7(k).

In the instant matter, Acquisto, the custodian of the NPLEx database, submitted a "Business Records Affidavit" together with a printout of the NPLEx record of the purchases and attempted purchases of ephedrine and pseudoephedrine made by Embrey in the month preceding Embrey's arrest. In his affidavit, Acquisto averred the following:

> 4.    The computerized database of pseudoephedrine/ephedrine sales logs by retailers are kept by the Business Records Holder in the regular course of business, and it was the regular course of that business for its employee or representative, with knowledge of the act, event, condition, or opinion recorded to make the record or to transmit information thereof to be included in such record.

10

5.      Appriss, Inc. provides a secured login website available to law enforcement called JusticeXchange. JusticeXchange enables law enforcement to have the capability of searching for and printing out pseudoephedrine/ephedrine sales logs and information maintained by the Business Records, as a function of the National Precursor Log Exchange (NPLEx).

6.      This affidavit certifies that all pseudoephedrine/ephedrine records printed by law enforcement from the JusticeXchange website are exact representations of the pseudoephedrine/ephedrine sales logs.

State's Ex. 51.  In addition to a log of purchases and attempted purchases of ephedrine and pseudoephedrine, the NPLEx report contained Embrey's name, date of birth, driver's license number, and address.  The NPLEx report shows that in the month preceding Embrey's arrest, Embrey made numerous purchases of ephedrine or pseudoephedrine.  The NPLEx report also shows that Embrey was blocked from purchasing ephedrine or pseudoephedrine on multiple other occasions.

Upon review, we conclude that the NPLEx report is imbued with an independent indicia of trustworthiness, and, as such, qualifies as a business record.  The information contained in the NPLEx report was submitted to the NPLEx database in the course of the retailers' regular business activity at the time of the purchase or attempted purchase by employees of the retailers who had firsthand knowledge of the transactions.  These submissions were made by individuals who, in the routine course of their employment, had a duty to accurately report the information and could be held criminally liable for a knowing or intentional failure to make an accurate report.  In addition, these individuals relied on the information contained in the database as part of the regular course of their employment as it was unlawful for them to complete the transaction if the database generated a "stop sale"

11

alert.

Because the individuals submitting the information had both firsthand knowledge of the purchases or attempted purchases as well as a duty to accurately report the purchases or attempted purchases, we conclude that Acquisto, as custodian of the records, was not required to have firsthand knowledge of the purchases or attempted purchases. *See Boarman*, 509 N.E.2d at 181 (providing that a sponsor of an exhibit need not have firsthand knowledge of the transaction represented by it, but rather only need to be able to show that the records were kept in the routine course of business and the information was submitted by one with personal knowledge of the transaction at the time of entry); *Williams*, 629 N.E.2d at 947 (providing that so long as the initial informant has personal knowledge of a fact, the recorders themselves need not have firsthand knowledge). Acquisto averred that the information contained in the NPLEx report was submitted by individuals with firsthand knowledge of the transactions in the regular course of their business, and that the report was an exact representation of the sales logs maintained by Appriss. The trial court acted within its discretion in determining that a proper foundation was laid, and the NPLEx report was admissible under the business records exception to the hearsay rule.

## II. Sufficiency of the Evidence

Embrey also contends that the evidence presented by the State is insufficient to sustain his conviction for Class C felony neglect of a dependent.

> When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences supporting the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to

12

determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007) (citations, emphasis, and quotations omitted). "In essence, we assess only whether the verdict *could* be reached based on reasonable inferences that may be drawn from the evidence presented." *Baker v. State*, 968 N.E.2d 227, 229 (Ind. 2012). Upon review, appellate courts do not reweigh the evidence or assess the credibility of the witnesses. *Stewart v. State*, 768 N.E.2d 433, 435 (Ind. 2002). Inconsistencies in witness testimony go to the weight and credibility of the testimony, "the resolution of which is within the province of the trier of fact." *Jordan v. State*, 656 N.E.2d 816, 818 (Ind. 1995).

Indiana Code section 35-46-1-4(a) provides, in relevant part, that a "person having the care of a dependent, whether assumed voluntarily or because of a legal obligation, who knowingly or intentionally: (1) places the dependent in a situation that endangers the dependent's life or health … commits neglect of a dependent, a Class D felony." "However, the offense is: (1) a Class C felony if it is committed … in a location where a person is violating IC 35-48-4-1 (delivery, financing, or manufacture of cocaine, methamphetamine, or a narcotic drug)." Ind. Code § 35-46-1-4(b). "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind.

Code § 35-41-2-2(b). "A person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so." Ind. Code § 35-41-2-2(a).

In arguing that the evidence is insufficient to sustain his conviction for Class C felony neglect of a dependent, Embrey does not challenge the sufficiency of the evidence demonstrating that he knowingly or intentionally placed a child in a situation that endangered the child's life or health, *i.e.*, a place where one was engaging in the manufacturing of methamphetamine. Embrey merely challenges the sufficiency of the evidence to prove that the child in question was his dependent. However, the evidence most favorable to the jury's verdict demonstrates that Embrey was the child's father, and, as a result, had a legal duty to care for the child.

When asked by the members of the U.S. Marshall's Fugitive Task Force who was present in the home, Embrey's mother said that her son, her son's wife or girlfriend, and "*their*" child were in the home. Tr. p. 15 (Emphasis added). The child in the home was subsequently identified as Jayden Embrey, and Embrey's grandfather testified that Embrey has a child named Jayden Embrey. In addition, when officers entered the home, Embrey and Stewart were both holding the child as they came out of a room together. This evidence is sufficient to prove that the child found in the home was a dependent of Embrey's. Embrey's claim to the contrary amounts to an invitation to reweigh the evidence, which we will not do. *See Stewart*, 768 N.E.2d at 435.

The judgment of the trial court is affirmed.

RILEY, J., and BROWN, J., concur.