**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Oct 29 2014, 10:00 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**TERRY A. WHITE**
Evansville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**J.T. WHITEHEAD**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ALVIN DONALD GRISBY, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 82A04-1402-CR-68 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE VANDERBURGH SUPERIOR COURT
The Honorable Robert J. Pigman, Judge
Cause No. 82D02-1301-FB-108

**October 29, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

## Case Summary

Alvin Grisby appeals his conviction for Class B felony conspiracy to commit dealing in methamphetamine. We affirm.

## Issues

Grisby raises three issues, which we restate as:

    I.      whether the trial court properly admitted National Precursor Log Exchange ("NPLEx") reports into evidence;

    II.     whether the trial court properly admitted evidence found as a result of a search warrant; and

    III.    whether the trial court properly admitted jail telephone conversations into evidence.

## Facts

Grisby and Nathan Kirby were friends, and Christina Powell was Grisby's girlfriend. On January 15, 2013, Grisby and Kirby spoke on the telephone about purchasing boxes of pseudoephedrine. The two men drove around trying to obtain boxes of the pseudoephedrine from other people, but they were unable to find any. They picked up Powell and drove to Chris's Pharmacy in New Harmony. Grisby gave Kirby and Powell money, and all three of them purchased boxes of pseudoephedrine. They then drove to Grisby and Powell's house in Evansville where they took the pills out of the packaging. Kirby and Grisby drove to O'Reilly Auto Parts store and Menard's to purchase tubing, starter fluid, and batteries. They returned to Grisby and Powell's house, and Kirby spent the night there. The next morning, Grisby gave Kirby some methamphetamine.

2

On January 16, 2013, Detective Patrick McDonald with the Evansville Police Department learned from Detective Brock Hensley that methamphetamine was being manufactured in Grisby's house. Detective Hensley learned this from a confidential informant. Detective McDonald had worked with the confidential informant on one prior occasion. However, the confidential informant had worked with Detective Hensley and other agencies on several occasions and had provided credible information. Detective McDonald requested that uniformed officers go to the residence for a "knock and talk." Tr. p. 93.

While Kirby was using his methamphetamine, the officers arrived and started knocking on the door. Grisby and Kirby tried to hide the items used to manufacture methamphetamine and dumped things out into the sink. After about ten to fifteen minutes of knocking, Grisby answered the door, and Grisby and Kirby were handcuffed. The confidential informant had told Detective McDonald that a bag of trash had been removed from the house, and Detective McDonald located the bag and examined the contents. He found receipts for pseudoephedrine purchased at Chris's Pharmacy, casings from stripped batteries, and empty blister packs of pseudoephedrine. Detective McDonald then checked the NPLEx system for the receipt found in the trash. He applied for and was granted a search warrant for the residence. Detective McDonald and other officers then searched the residence and found numerous items associated with the manufacturing of methamphetamine.

The State ultimately charged Grisby with Class B felony conspiracy to manufacture methamphetamine. Specifically, the State alleged that Grisby:

3

with the intent to commit the felony of Manufacturing Methamphetamine, agreed with Christina Powell and Nathan Kirby to commit the aforesaid crime of Manufacturing Methamphetamine, and that either the above listed defendant or Christina Powell and Nathan Kirby performed one or more of the following overt acts in furtherance of the agreement:

1) Christina Powell, Alvin Grisby and Nathan Kirby purchased pseudoephedrine for the purpose and/or use in the manufacturing of Methamphetamine.

2) Christina Powell allowed Alvin Grisby and Nathan Kirby to manufacture methamphetamine at her residence at 1808 Van Bibber Avenue, Evansville, Indiana.

3) Alvin Grisby and Nathan Kirby initiated and/or took part in the process of manufacturing methamphetamine . . . .

App. p. 45. Grisby filed a motion to suppress the evidence obtained as a result of the search warrant, but the trial court denied Grisby's motion. At Grisby's December 2013 jury trial, the trial court admitted recordings of jail telephone calls between Grisby and Powell over Grisby's objection. The trial court also admitted NPLEx reports regarding Grisby, Powell, and Kirby over Grisby's objection. The jury found Grisby guilty as charged, and the trial court sentenced him to fourteen years in the Department of Correction. Grisby now appeals.

**Analysis**

*I. Admission of NPLEx Reports*

Grisby argues that the trial court abused its discretion by admitting NPLEx reports concerning Grisby, Kirby, and Powell. We afford the trial court wide discretion in ruling on the admissibility of evidence. Nicholson v. State, 963 N.E.2d 1096, 1099 (Ind. 2012).

4

We review evidentiary decisions for an abuse of discretion and reverse only when the decision is clearly against the logic and effect of the facts and circumstances. Id.

Indiana Code Section 35-48-4-14.7 requires Indiana retailers to produce NPLEx reports when selling products containing ephedrine or pseudoephedrine. Such a retailer must require the purchaser to produce a valid government-issued photo identification card and sign a written or electronic log. The retailer must maintain a record of each sale that includes the purchaser's name and address, the type of identification presented, the issuer of the identification, the identification number, and the amount of ephedrine or pseudoephedrine purchased. Retailers have limits on the amount of pseudoephedrine that can be sold to an individual. Beginning on January 1, 2012, retailers were required to electronically submit the required information to NPLEx.

The State sought to admit the NPLEx reports regarding Grisby, Kirby, and Powell. Grisby objected that the NPLEx reports were too "remote" because some of the reports went back several years and that, because Kirby had already testified that they purchased pseudoephedrine at Chris's Pharmacy, evidence of other purchases was irrelevant. Tr. p. 102. Grisby also argued that the reports were hearsay under Evidence Rule 803(6) and that they were a violation of the Confrontation Clause. The trial court overruled the objections, except it only allowed Grisby's NPLEx report pertaining to the ninety days prior to his arrest.

On appeal, Grisby argues that the NPLEx reports were inadmissible under Indiana Evidence Rule 404(b), Indiana Evidence Rule 801, Indiana Evidence Rule 803, and the Confrontation Clause. At trial, Grisby's objection related to relevancy, Evidence Rule

5

803(6), and the Confrontation Clause. Grisby did not object at trial based on Evidence Rule 801 or Evidence Rule 404(b). A party may not object on one ground at trial and raise a different ground on appeal. White v. State, 772 N.E.2d 408, 411 (Ind. 2002). Those issues are, therefore, waived for review. However, waiver notwithstanding, we will address Grisby's arguments.

We begin by addressing the argument regarding Evidence Rule 801. At the time of Grisby's trial, Evidence Rule 801(d)(2)(E) provided that a statement is not hearsay if the statement is offered against a party and is "a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy."[1] The State must prove that there is "independent evidence" of the conspiracy before the statements will be admissible as non-hearsay under Rule 801(d)(2)(E). Lander v. State, 762 N.E.2d 1208, 1213 (Ind. 2002). "This means that the State must show . . . (1) [the] existence of a conspiracy between the declarant and the party against whom the statement is offered and (2) the statement was made in the course and in furtherance of this conspiracy." Id. Because the rule pertains to statements by co-conspirators, this argument would apply only to the NPLEx reports on Powell and Kirby, not the NPLEx report regarding Grisby. Moreover, the State properly points out that the NPLEx reports are not "statements" by Powell or Kirby. Grisby cites no authority that NPLEx reports generated by the retailers could be considered "statements" of co-conspirators for purposes of Rule 801(d)(2)(E). Further, the State presented independent evidence of the conspiracy through Kirby's testimony. Consequently, Grisby's argument regarding Evidence Rule 801(d)(2)(E) fails.

[1] Indiana Rules of Evidence were amended effective January 1, 2014.

Next, we address Grisby's argument regarding Evidence Rule 803(6), which concerns records of regularly-conducted business activity and at the time of Grisby's trial provided:

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony or affidavit of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate a lack of trustworthiness. The term "business" as used in this Rule includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

Grisby acknowledges that NPLEx reports were deemed admissible under the business records exception in Embrey v. State, 989 N.E.2d 1260, 1267 (Ind. Ct. App. 2013). Grisby's only argument is that Embrey is distinguishable because "the State in that case did not assert that its evidentiary purpose was to show that the co-conspirators were acting at the defendant's direction, as the case is here." Appellant's Br. p. 8. Grisby cites no authority demonstrating that the evidentiary purpose of the document is relevant as to whether the document is admissible under Evidence Rule 803(6). Rather, under the Rule, "[t]he sponsor need only show that the exhibit was part of certain records kept in the routine course of business and placed in the records by one who was authorized to do so, and who had personal knowledge of the transaction represented at the time of entry."

7

Embrey, 989 N.E.2d at 1265. Grisby has failed to demonstrate that Embrey is distinguishable. The NPLEx reports were admissible under Evidence Rule 803(6).

Next, Grisby argues that the reports regarding Powell and Kirby were inadmissible under Evidence Rule 404(b). Grisby makes no argument regarding the NPLEx report concerning his own pseudoephedrine purchases. At the time of Grisby's trial, Evidence Rule 404(b) provided: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ." Powell and Kirby were co-conspirators and the purchase of the pseudoephedrine was an overt act listed in the charging information against Grisby. As such, the NPLEx reports were intrinsic to the offense and were not evidence of "other crimes, wrongs, or acts." See Wages v. State, 863 N.E.2d 408, 411-12 (Ind. Ct. App. 2007) (holding that evidence of the defendant's earlier conduct was "intrinsic" to the reckless homicide charge), trans. denied.[2] The admission of the reports was not barred by Evidence Rule 404(b).

Finally, Grisby argues that the admission of the NPLEx records violated his rights under the Confrontation Clause. The Sixth Amendment to the United States Constitution, made applicable to the States via the Fourteenth Amendment, states: "In all criminal

---

[2] Grisby's argument on this issue is not cogent. See Ind. Appellate Rule 46(A)(8)(a). According to Grisby, Rule 404(b) only pertains to an accused, victim, or witness at a trial, and neither Powell nor Kirby was the accused, a victim, or a witness. Appellant's Br. pp. 10-11. We note that Kirby was, in fact, a witness at the trial. Further, to the extent Grisby argues that the reports were too remote in time, we take this argument to mean that the purchases of pseudoephedrine by Powell and Kirby at other times were evidence of "other wrongs." Any error in the admission of the other purchases was harmless. In light of the evidence presented at trial, the fact that Powell and Kirby purchased pseudoephedrine at other times would not have affected Grisby's substantial rights.

prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The Confrontation Clause prohibits the admission of an out-of-court statement if it is testimonial, the declarant is unavailable, and the defendant had no prior opportunity to cross-examine the witness. King v. State, 985 N.E.2d 755, 758 (Ind. Ct. App. 2013) (citing Crawford v. Washington, 541 U.S. 36, 59, 124 S. Ct. 1354, 1369 (2004)), trans. denied. Although the Crawford court intentionally refrained from defining what evidence is testimonial, it listed three "formulations of this core class of 'testimonial' statements":

(1)     ex parte in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially;

(2)     extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions;

(3)     statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.

Crawford, 541 U.S. at 50-52, 124 S. Ct. at 1364. "Business and public records are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial." Melendez–Diaz v. Massachusetts, 557 U.S. 305, 324, 129 S. Ct. 2527, 2539-40 (2009).

9

Grisby acknowledges the holding in <u>Melendez-Diaz</u> but argues that the NPLEx reports were not used "for any legitimate business purpose." Appellant's Br. p. 12. We held in <u>Embrey</u>, 989 N.E.2d at 1267, that the NPLEx records qualified as business records under Evidence Rule 803(6). The State points out that the NPLEx records "are kept to inform retail pharmacies of when they may, or may not, sell the [pseudoephedrine] product." Appellee's Br. p. 18. Although they may occasionally be used to establish or prove some fact at trial, that is not the main purpose of the records. The records are not testimonial, and Grisby's argument fails.

## II. *Evidence Discovered as a Result of Search Warrant*

Next, Grisby argues that the trial court abused its discretion by admitting evidence discovered as a result of the search warrant. The trial court has broad discretion to rule on the admissibility of evidence. <u>Guilmette v. State</u>, 14 N.E.3d 38, 40 (Ind. 2014). We review its rulings "for abuse of that discretion and reverse only when admission is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights." <u>Id.</u>

On appeal, Grisby does not identify specifically which evidence he contends should not have been admitted. At the trial, he did not object to the admission of Exhibits 10 through 31, 33, and 34, which include photographs of evidence found at the residence as a result of the search warrant. The failure to object at trial waives an issue on appeal unless the appellant can show fundamental error. <u>Knapp v. State</u>, 9 N.E.3d 1274, 1281 (Ind. 2014). Grisby makes no fundamental error argument. He did, however, object to the admission of Exhibits 35 through 40, which are photographs of physical evidence

10

found in the residence. Consequently, we will address Grisby's argument as it relates to Exhibits 35 through 40.

Grisby's objection was based on his prior motion to suppress. In the motion to suppress, Grisby argued that Detective McDonald did not receive the information directly from the confidential informant, that Detective McDonald did not have substantial prior experience with the confidential informant, and that the knock-and-talk did not result in independent verification of the confidential informant's information. On appeal, he argues that there was no probable cause to support the search warrant because there was no independent corroboration of the confidential informant's information and Detective McDonald had only worked with this confidential informant once before.

"In deciding whether to issue a search warrant, '[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" Jackson v. State, 908 N.E.2d 1140, 1142 (Ind. 2009) (quoting Illinois v. Gates, 462 U.S. 213, 238, 103 S. Ct. 2317 (1983)). The duty of the reviewing court is to determine whether the magistrate had a "substantial basis" for concluding that probable cause existed. Id. A substantial basis requires the reviewing court, with significant deference to the magistrate's determination, to focus on whether reasonable inferences drawn from the totality of the evidence support the determination of probable cause. Id. Although we review de novo the trial court's substantial basis determination, we nonetheless afford "significant deference to the

magistrate's determination" as we focus on whether reasonable inferences drawn from the totality of the evidence support that determination.  Id.

"A warrant and its underlying affidavit must comply with the Fourth Amendment prohibition on unreasonable searches and seizures, as well as Indiana constitutional and statutory law."  Id. at 1143.  The text of Article I, section 11 of the Indiana Constitution contains nearly identical language to the Fourth Amendment to the United States Constitution.  Id.  These constitutional principles are codified in Indiana Code Section 35-33-5-2, which details the information to be contained in an affidavit for a search warrant.  Id.  Under Indiana Code Section 35-33-5-2(b), when the affidavit is based on hearsay, it must either: "(1) contain reliable information establishing the credibility of the source and of each of the declarants of the hearsay and establishing that there is a factual basis for the information furnished; or (2) contain information that establishes that the totality of the circumstances corroborates the hearsay."

Grisby first argues that the information from the confidential informant was "double hearsay" because Detective McDonald learned the information from another officer, who had previously worked with the confidential informant.  Appellant's Br. p. 14.  However, "as long as participating officers seeking the issuance of a search warrant collectively have probable cause, their individual knowledge can be imputed to the officer signing the affidavit in support of the search warrant."  Utley v. State, 589 N.E.2d 232, 236 (Ind. 1992), cert. denied.  Thus, the fact that Detective McDonald did not have personal knowledge of the confidential informant's reliability does not affect the determination of probable cause.

In general, "uncorroborated hearsay from a source whose credibility is itself unknown, standing alone, cannot support a finding of probable cause to issue a search warrant." Jaggers v. State, 687 N.E.2d 180, 182 (Ind. 1997). The trustworthiness of hearsay for purposes of proving probable cause can be established in a number of ways, including where: (1) the informant has given correct information in the past; (2) independent police investigation corroborates the informant's statements; (3) some basis for the informant's knowledge is shown; or (4) the informant predicts conduct or activities by the suspect that are not ordinarily easily predicted. Id. "Depending on the facts, other considerations may come into play in establishing the reliability of the informant or the hearsay." Id.

Here, the confidential informant had previously provided reliable, credible information to Detective McDonald, Detective Hensley, and federal agencies. The confidential informant told Detective Hensley that Grisby was manufacturing methamphetamine at the residence and that the confidential informant had placed trash from the residence in a nearby dumpster. A search of that trash revealed items used to manufacture methamphetamine and a receipt for the purchase of pseudoephedrine from Chris's Pharmacy. Detective McDonald reviewed NPLEx reports and learned that Powell had made the purchase described on the receipt and that Grisby and Kirby had made similar purchases near the same time. Based on this information, the affidavit demonstrated the confidential informant's credibility and contained other information corroborating the confidential informant's information. Consequently, probable cause

13

existed to support the search warrant, and the trial court properly admitted the Exhibits 35 through 40, which were discovered during the search.

### III. Jail Telephone Conversations

While Grisby was incarcerated, he had several telephone calls with Powell, which were recorded. However, in the original recording, the volume of Grisby's voice was low while Powell's voice was loud. Officer Tony Walker used an electronic system to adjust the volume of Grisby's voice to the same range as Powell's voice so that the recording could be understood. Grisby objected to the admission of the adjusted recording, and the trial court overruled the objection. The trial court concluded after listening to both recordings that the adjusted recording was admissible. The trial court noted that the content was not changed, that the tone was not changed, and that the adjusted recording was more audible.

On appeal, Grisby argues that the trial court abused its discretion by admitting the adjusted recording. According to Grisby, enhancing or manipulating his voice on the recording gave "undue weight" to his voice and the things that he said in the recording. Appellant's Br. p. 17. Grisby relies on Indiana Evidence Rule 403, which at the time of his trial provided: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Grisby cites no cases to support his argument.

We disagree with Grisby's assertion that "undue weight" was given to his voice in the recording. Rather, the manipulation of the volume on the recording merely made it

14

more audible and made the volume of his voice comparable to the volume of Powell's voice. The content and tone of Grisby's and Powell's conversation was unchanged. Grisby has failed to show that the relevance of the recording was substantially outweighed by the danger of unfair prejudice. The trial court did not abuse its discretion by admitting the recording.

## Conclusion

The trial court properly admitted the NPLEx reports, the evidence found as a result of the search warrant, and the adjusted recordings of Grisby's jail telephone conversations. We affirm.

Affirmed.

BRADFORD, J., and BROWN, J., concur.