LEWIS, J.
Appellant, Jeffrey Shardon Morrill, challenges his judgment and sentence for trafficking in methamphetamine. Although Appellant raises three issues on appeal, we confine our opinion to the following issue: whether the trial court erred in admitting the National Precursor Log Exchange (“NPLEx”) report under the business records exception to the hearsay rule. We find no error in the admission of the NPLEx report, and we affirm on all issues raised.

Facts

On October 1, 2013, while investigating an unrelated matter, law enforcement officers discovered plastic bottles containing *543 methamphetamine and related paraphernalia in a. barn on Appellant’s property. Appellant was charged with trafficking in 200 grams or more of methamphetamine. Prior to the jury trial, the State filed a notice of intent to offer evidence of Appellant’s purchases and attempted purchases of ephedrine or related compounds, as compiled by the NPLEx, pursuant to the business records exception to the hearsay rule.
The State also filed a motion in limine, seeking to introduce the NPLEx report pursuant to the business records exception and section 893.1495, Florida Statutes. In its motion, the State explained that section 893.1495 requires retailers to limit the amount of ephedrine arid related compounds sold to an individual, requires purchasers of such products to present a valid identification, and requires retailers to report purchases and attempted purchases of such products to an electronic record-keeping system that is approved by the Florida Department of Law Enforcement (“FDLE”); that the FDLE has contracted with an electronic record-keeping system known as the NPLEx, which is administered by Appriss, Inc.; and that the records custodian of the NPLEx provided a report detailing Appellant’s purchases and attempted purchases of such products, which was accompanied by an affidavit that satisfied sections 90.803(6) and 90.902(11),'Florida Statutes, and thus qualified as a self-authenticating business, record.
The State submitted the affidavit of the records custodian of the NPLEx, James Acquisto, which stated as follows:
3. I am the custodian of the records of all pseudoephedrine/ephedrine sales logs for retailers that are maintained by Appriss Inc .... (the “Business Records Holder”);
4.. The computerized database . of pseudoephedrine/ephedrine sales logs by retailers are kept by the Business Records Holder -in the regular course of business, and it was. the regular course of that business for its employee or representative, with knowledge of the act, event, condition, or opinion recorded to make the record or to transmit information thereof to be included in such record.
5. Appriss, Inc. proyides a secured login website available to law enforcement called JusticeXehange; JusticeX-change enables law enforcement to have the capability of searching for and printing out pseudoephedrine/ephedrine sales logs and information maintained by the Business Records, as a- function of the [NPLEx],
6. This affidavit certifies that all pseudoephedrine/ephedrine records printed by law enforcement from the JusticeXehange website are exact representations of - • the pseudoephed-rine/ephedrine sales logs.
At the outset of Appellant’s jury trial, the trial court took the motion in limine under' advisement after hearing the parties’ arguments with regard to the timeliness of the evidence, which is not raised as ari issue on this appeal.' During trial, outside of the jury’s presence, the parties argued the admissibility of the NPLEx report. Appellant objected to the admissibility of the NPLEx report on the ground that it was hearsay and.did not fall within the business records exception because Mr. Acquisto could not certify that the businesses -that collected' the information did so.pursuant to, and in compliance with, the business' records exception. Noting that no Florida appellate court has addressed the. admissibility of the NPLEx reports, the trial court, relying in part on decisions of other jurisdictions, concluded *544 that the NPLEx report fell within the business records exception. In so ruling, the trial court took judicial notice of Chapter 893 of the Florida Statutes and the Florida Administrative Code and concluded that “the argument that in order for these to be admissible as an exception to hearsay, that each individual pharmacy would have to be brought before the court, is both impractical and implausible.”
Accordingly, the NPLEx report was admitted into evidence at trial through the testimony of Captain Raley, a law enforcement officer'. Captain Raley testified that state and federal laws require retailers to report to the NPLEx all' sales of products containing ephedrine or pseudoephedrine, which are essential ingredients in manufacturing methamphetamine; require purchasers of such products to be over the age of eighteen, to present a valid identification, and to sign for the purchase; and limit the amount of such products one may purchase in a given time-frame. Captain Raley further testified about how he accessed and retrieved from the NPLEx the report of Appellant’s purchases and attempted purchases of ephedrine or pseu-doephedrine products, testified that the printed report was a fair and accurate depiction of the information he viewed on the NPLEx website, and described what the report reflected. Appellant was ultimately convicted of the charged offense, and this appeal followed.

Analysis

A trial court’s ruling on the admissibility of evidence is reviewed for an abuse of discretion. Wilcox v. State, 143 So.3d 359, 373 (Fla.2014) (“Discretion is abused only when no reasonable person would take the view adopted by the trial court.”). However, a trial court’s discretion is limited by the'evidence code and case law, and its interpretation of those authorities is reviewed de novo, Leon v. State, 68 So.3d 351, 353 (Fla. 1st DCA 2011). Hearsay evidence is inadmissible, except as provided by statute. § 90.802, Fla. Stat. (2013). Records of regularly conducted business activity constitute a hearsay exception and “are not inadmissible as evidence, even though the declarant is available as a-witness.”. § 90.803(6), Fla. Stat. (2013).
In'this appeal, Appellant contends that the NPLEx report did not fall within the business records exception to the hearsay rule because Mr, Acquisto lacked personal knowledge. Florida’s business records exception provides as follows:
A memorandum, report, record, or data compilation, in any form, of acts, events, .conditions, opinion, or diagnosis, made at or near the time by, .or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity and if it was the regular practice of that business activity to make such memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or as shown by a certification or declaration that complies with, paragraph (c) and s.90.902(ll), unless the sources of information or other circumstances show lack of trustworthiness....
§ 90.803(6)(a), Fla. Stat. In turn, section 90.902 provides that “[e]xtrinsic evidence of authenticity as a condition precedent to admissibility is not required for:”
(11) An original or a duplicate of evidence that would be admissible under s.90.803(6), which is maintainéd' in a foreign country or domestic location and is accompaniéd by a certification or declaration from the custodian of the records or another qualified person certifying or declaring that the record:
(a) Was made at or near the time of the occurrence of the matters set forth by, *545 or from information transmitted by, a person having knowledge of those matters;
(b) Was kept in the course of the regularly conducted activity; and
(c) Was made as a regular practice in the course of the regularly conducted activity,
provided that falsely making such a certification or declaration would subject the maker to criminal penalty under the laws of the foreign or domestic location in which the certification or declaration was signed.
§ 90.902(11), Fla. Stat. (2013).
Thus, to secure the admissibility of evidence under the business records exception, the proponent of the evidence must show that: (1) the record was made at or near the time of the event; (2) the record was made by, or from information transmitted by, a person with knowledge; (3) the record was kept in the ordinary course of a regularly conducted business activity; and (4) it was a regular practice of that business to make such a record. Yisrael v. State, 993 So.2d 952, 956-57 (Fla.2008). The proponent of the evidence must present this information in one of three formats: (1) testimony of a records custodian, (2) stipulation by the parties, or (3) a certification or declaration that complies with sections 90.803(6)(c) and 90.902(11). Id. at 956-57.
“As a general rule, the authenticating witness need not be the person who actually prepared the business records,” and “[t]he records custodian or any qualified witness who has the necessary knowledge to testify as to how the record was made can lay the necessary foundation.” Nationstar Mortg., LLC v. Berdecia, 169 So.3d 209, 213 (Fla. 5th DCA 2015) (explaining that the rationale behind the business records exception is that such documents have a high degree of reliability because businesses have an incentive to keep accurate records) (internal citations omitted). Because the authenticating witness must be able to establish each of the predicates, he or she “must be well enough acquainted with the activity to give the testimony.” Id. (“In the mortgage foreclosure context, proper authentication by a witness for the purposes of the business records exception -‘requires that the witness demonstrate familiarity with the record-keeping system of [the] business that prepared the document and knowledge of how the data was uploaded into the system.’ However, ,‘[t]he law does not require an affiant who relies on computerized bank records to be the records custodian who entered or created the data, nor must the affiant identify who entered the data into the computer.’ ... In a perfect world, the foreclosure plaintiff would call an employee of the previous note owner to testify as to the documents. However, this is neither practical nor necessary in every situation — ”) (Internal citations omitted).
The key statutory provision to our analysis of the issue presented in this case is section 893.1495, Florida Statutes, which governs the retail sale of ephedrine and related compounds and provides in part as follows:
(2) A person may not knowingly obtain or deliver to an individual in any retail over-the-counter sale any nonprescription compound, mixture, or preparation containing ephedrine or related compounds in' excess of the following amounts:
(a) In any single day, any number of packages that contain a total of 3.6 grams of ephedrine or related compounds;
(b) In any single retail, over-the-counter sale, three packages, regardless of *546 -weight, containing ephedrine or related compounds; or
(c) In any 30-day period, in any number of retail, over-the-counter sales, a total of 9 grams or more of ephedrine or related compounds. ■ ■
[[Image here]]
(4) A person who is the owner or primary operator of a retail outlet where any nonprescription compound, mixture, or preparation containing ephedrine or related compounds is available for sale may not knowingly allow an employee to engage in the retail sale of such- compound, mixture, or-.preparation unless the employee has completed an- employee training program that shall include, at a minimum, basic instruction on state and federal regulations relating to- the sale and distribution of such compounds, mixtures, or preparations.
(5)(a) Any person purchasing, receiving, or otherwise acquiring any nonprescription compound, mixture, or preparation containing any detectable quantity of ephedrine or related compounds must:
1. Be at least 18 years.of age.
2. Produce a government-issued photo identification showing his or her name, date of birth, address, and photo identification number or an alternative form of identification acceptable under federal regulation 8 C.F,R. s.274a.2(b)(1)(v)(A) and (B),
3. Sign his or her name on a record of the purchase, either on paper or on an electronic signature capture device.
(b) The Department of Law Enforcement shall approve an electronic recordkeeping system for the purpose of recording and monitoring the real-time purchase of products containing ephedrine or related compounds and for the purpose of monitoring this information in order to prevent or- investigate illegal -purchases of these products. The approved electronic recordkeeping system shall be provided to a pharmacy or retailer without any additional cost or expense. A pharmacy or. retailer may request an exemption from electronic reporting from the Department of Law Enforcement if the pharmacy or retailer lacks the technology to access the electronic recordkeeping system and süch pharmacy or retailer maintains a sales volume of less than 72 grams of ephedrine or related compounds in a 30-day period. The electronic recordkeeping system shall record the following:
• 1. The date and time of the transaction.
2. The name, date of birth, address, and photo identification number of the purchaser, as well as the type of identification and the government of issuance.
3. The number of packages purchased, the total grams per package, and the name of the compound, mixture, or preparation containing ephedrine or related compounds.
4.. The signature of the purchaser, or a unique number relating the transaction to a.paper signature maintained at the retail premises.
. (c) The electronic recordkeeping system shall provide for:
1. Real-time tracking of nonprescription over-the-counter sales under this section.
2. The blocking .of nonprescription over-the-counter sales in excess of those allowed by the laws of this state or federal law.
(6)A nonprescription compound, mixture, ■ or preparation containing any quantity of ephedrine or related - compounds may not be sold over the counter unless reported to an electronic record- *547 keeping system approved.by the Department of Law Enforcement. This subsection does not apply if the pharmacy or retañer has received an exemption from the Department of Law Enforcement under .paragraph (5)(b),,.
(7) Prior to completing a transaction, -a pharmacy or retailer distributing products containing ephedrine or related compounds to consumers in this state shall submit all required data into an electronic recordkeeping system approved by the Department of Law Enforcement at the point of sale or through an'interface with the electronic record-keeping system, unless granted an exemption by-the Department of Law Enforcement pursuant to paragraph (5)(b).
(8) The data submitted to -the electronic recordkeeping system must be retained within the system for no less than 2 years following the date of entry.
[[Image here]]
(11) Any individual who violates subsection (2), subsection (3), or subsection (4) commits:
[[Image here]]
(14) The Department of Law Enforcement shall contract or enter into a memorandum of understanding, as applicable, with a private third-party administrator to implement the electronic recordkeeping system required by this section.
(15) The Department of Law Enforcement shall adopt rules necessary to implement this section.
§ 893.1495, Fla. Stat. (2013).. Although section 893.1495 was originaUy enacted in 2005, most of its current provisions were not added until 2010. See §. 893.1495, Fla. Stat.; Ch.2010-191, § 1, Laws of Fla.
Pursuant to the 2010 amendments to section 893,1495, Florida Administrative Code .Rule 11D-2.005 was adopted in 2011. Rule 11D-2.005 is titled “Methamphetamine Precursor Electronic Monitoring System” and provides in part as follows:
(1) A pharmacy or retailer cbndueting business within the state of Florida who engages' in the sale of any nonprescription compound, mixture, or preparation containing ephedrine or related compounds shall be required to participate in the Methamphetamine Precursor Electronic Monitoring System.
(2) Definitions:
[[Image here]]
(c) “National Precursor Log Exchange” (NPLEx) refers to the FDLE approved Methamphetamine Precursor Electronic Monitoring System.
[[Image here]]
(3) Each retailer, who engages in the sale of any nonprescription compound, mixture, or preparation containing ephedrine or related compounds shall contact the Department to enroll in NPLEx....
[[Image here]]
(5) The Department wflj provide an FDLE NPLEx Administrator:
[[Image here]]
(6) Retailer’s - Duty to Maintain Logbook.
(a) Should a transaction occur during a period in which NPLEx is inoperable due to states of declared emergency, natural disaster, or other acts of God, the retailer must:
• (b) Maintain a written log capturing all required information, and enter, the transaction data into NPLEx within sev *548 enty-two (72) hours of the system becoming operational.
(c) Should a retailer be granted an exemption from participation in NPLEx, it is still the duty of any retailer within the state of Florida to maintain a logbook in compliance with the federal Combat Methamphetamine Epidemic Act of 2005, as specified in Title VII of the USA PATRIOT Improvement and Reauthorization Act of 2005 (Public Law 109-177), and Section 893.1495, F.S. (2009).
(7) Law Enforcement Access to NPLEx.
(а) Information contained within NPLEx is available to law enforcement officers, designated by their agency, for law enforcement purposes, pursuant to Section 893.1495, F.S. (2009).
Fla. Admin. Code R. 11D-2.005.
There are no cases construing section 893.1495 or rule 11D-2.005, and the admissibility of the NPLEx report raises an issue of first impression in Florida. We note that Appellant's sole argument on appeal with regard to the admissibility of the NPLEx report is that it does not satisfy the business records exception because Mr. Acquisto lacked personal knowledge; that is, Mr. Acquisto was the wrong person to lay the foundation because he lacked personal knowledge of the underlying transactions.
Appellant correctly argues that in order to be admissible as a business record, the record must have been made by, or from information transmitted by, a person having knowledge of the matters contained therein. Given that the State elected to establish the necessary predicate through a declaration, Mr. Acquisto’s affidavit had to comply with section 90.902(11) and declare that the record was made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person having knowledge of those matters. However, Florida law does not require the authenticating witness to be the person who entered the data and requires only that Mr. Acquisto be familiar with the retailers’ record-keeping system.
In his affidavit, Mr. Acquisto attested that “[t]he computerized database of pseu-doephedrine/ephedrine sales logs by retailers are kept by the Business Records Holder in the regular course of business, and it was the regular course of that business for its employee or representative, with knowledge of the act, event, condition, or opinion recorded to make the record or to transmit information thereof to be included in such record.”
Further, section 893.1495 and rule 11D-2.005 regulate the retail sale of non-prescription products containing ephedrine or related compounds by limiting the quantity of such products retailers may sell to an individual within specified time-frames, requiring the purchaser of such products to produce a government-issued photo identification and sign the record of purchase, requiring retailers to record and monitor the real-time purchase of such products by submitting all required data to the NPLEx before completing the sale transaction and to block sales in excess of what is allowed by state and federal law, and imposing criminal liability on persons who violate this law. The law requires the purchaser to produce to the retailer’s employee a government-issued photo identification showing his or her name, date of birth, address, and photo identification number and to sign the record of purchase. The law also requires the employee to submit all required data to the NPLEx prior to completing the sale transaction. As such, it is clear that the entries into the NPLEx are made at or near the time by, or from information transmitted by, a person with knowledge.
Therefore, we reject Appellant’s argument that the NPLEx report was not ad *549 missible as a business record because Mr. Acquisto lacked personal knowledge and find that the report is characterized by an independent indicia of trustworthiness. We agree with the State and the trial court that it would be impractical to require the testimony of each employee who made a transaction entry into the NPLEx, or even every retailer.
Lastly, we note that our holding is supported by the decisions of other jurisdictions. For example, in Embrey v. State, 989 N.E.2d 1260, 1261, 1263, 1266 (Ind.Ct.App.2013), the Indiana Court of Appeals was also faced with the argument that the trial court had erroneously admitted an NPLEx report under the business records exception where Mr. Acquisto submitted an affidavit (identical to the one he submitted in our case) because he lacked personal knowledge of the recorded transactions. The Indiana Court of Appeals rejected that argument and held that the NPLEx report was properly admitted as a business record. Id. at 1266-67. The court explained Indiana’s business records exception (which is almost identical to Florida’s business records exception) and Indiana’s statutory requirement for retailers to record all sales of non-prescription products containing ephedrine or pseudoephedrine (which is very similar to Florida’s requirement). Id. at 1264-66. The court then concluded as follows:
[T]he NPLEx report is imbued with an independent indicia of trustworthiness, and, as such, qualifies as a business record. The information contained in the NPLEx report was submitted to the NPLEx database in the course of the retailers’ regular business activity at the time of the purchase or attempted purchase by employees of the retailers who had firsthand knowledge of the transactions. These submissions were made by-individuals who, in the routine course of their employment, had a duty to accurately report the information and could be held criminally liable for a knowing or intentional failure to make an accurate report. In addition, these individuals relied on the information contained in the database as part of the regular course of their employment as it was unlawful for them to complete the transaction if the database generated a “stop sale” alert.
Because the individuals submitting the information • had both firsthand knowledge of the purchases or attempted purchases as well as a duty to accurately report the purchases or attempted purchases, we conclude that ’ Acquisto, as custodian of the records, was. not required to have firsthand knowledge of the purchases or . attempted purchases.. Acquisto averred that the information contained in the NPLEx report was submitted by individuals with ■firsthand knowledge of the transactions in the regular course of their business, and that the report was an exact representation of the sales logs maintained by Appriss.. The trial court acted within its discretion in determining that a proper foundation was laid, and the NPLEx report was admissible under the- business records exception to the hearsay rule.
Id. at 1267; see also United States v. Collins, 799 F.3d 554, 582-84 (6th Cir.2015) (finding that the pseudoephedrine purchase logs were properly admitted under the business records exception where Mr. Acquisto described the process by which the records are created, stored, and accessed and law enforcement officers explained the process by which they accessed and retrieved the records from the database, and noting that a witness need only be familiar with the record-keeping system and need not have personal knowledge of the records’ preparation); United States v. Towns, 718 F.3d 404, 407-11 (5th Cir.2013) (holding that the pseudoephedrine purchase logs from various retailers were ad *550 missible as business records because “[t]he purchase logs comprised records of a regularly conducted activity, which were made at or near the time of the purchase by individuals whose job duties entailed making those record” and “this information was certified 'by the records custodians’ affidavits and there was no evidence of untrustworthiness in the record-keeping procedures,” and explaining that “the affidavit of a record custodian is sufficient to lay the foundation for a business record” and “[t]here is therefore no need to have individual cashiers from each of the pharmacies ■ testify5.’), cert. denied, — U.S. —, 134 S.Ct. 307, 187 L.Ed.2d 155 (2013); United States v. Mashek, 606 F.3d 922, 930 (8th Cir.2010) (holding that the admission of the pseudoephedrine purchase logs did not violate the defendant’s confrontation rights because “[t]he pseu-doephedrine logs were kept in the ordinary- course of business pursuant to Iowa law and are business records under Federal Rule of Evidence 803(6)”); United States v. Schmitt, 12-CR-4076-DEO, 2013 WL 3177885, at *5-6 (N.D.Iowa June 21, 2013) (finding that the custodian of the central state database was the proper person to lay the business records foundation for the NPLEx reports and noting that it would be a-practical impossibility to require each retailer employee who made an entry into the database to testify).

Conclusion

Therefore, we hold that the trial court did not err by admitting the NPLEx report under the business, records exception to the hearsay rule and affirm Appellant’s judgment and sentence.
AFFIRMED.
THOMAS and ROWE, JJ„ concur.