TYSON, Judge.
 

 *629
 
 Eric Douglas Hicks ("Defendant") appeals from judgment entered after a jury convicted him of manufacturing methamphetamine and maintaining a dwelling for the purpose of keeping methamphetamine. We find no error in Defendant's conviction or in the judgment entered thereon.
 

 I. Factual Background
 

 A. State's Evidence
 

 In the fall of 2012, school resource officer Timothy Winters ("Officer Winters") received information from several students, who reported Jennifer McCoury ("McCoury") was making methamphetamine and smoking marijuana with her high-school-aged son. Officer Winters shared this information with Avery County Sheriff's Deputy Casey Lee ("Officer Lee"). Officers verified the tip by conducting a "meth check," which showed McCoury had made multiple purchases of Sudafed, which contains pseudoephedrine, the precursor chemical to methamphetamine.
 

 Officer Lee and others went to McCoury's home to "[c]heck on the safety" of her children on 12 October 2012. No one was present at the residence when officers arrived. Officer Lee testified "[t]here were
 
 *630
 
 signs of a meth lab" outside McCoury's home. Officer Lee and others subsequently went to Defendant's residence to locate McCoury and her children. The officers knew Defendant was the father of McCoury's daughter, who was six or seven years old at the time.
 

 Officers announced themselves and knocked on Defendant's door for approximately fifteen minutes. No one answered. Officer Lee walked around the house to the side door and noticed in plain view a trash can with two plastic bottles "sticking up, [with] a drilled hole in the top of one of them" in plain view. Officer Lee testified he "believed those bottles to be used to manufacture meth[,]" based on his training and experience. He also observed "a white granular substance" was present inside the bottles and stated the substance "[was] consistent with meth manufacture."
 

 Defendant eventually answered the door and allowed the officers to walk through his
 
 *344
 
 home to look for his daughter. Defendant also gave his consent for the officers to search his house and property. The officers did not find anything illegal during this initial search. Officer Lee inquired about the two plastic bottles he had observed outside. Defendant "denied any knowledge" about them. Defendant was arrested and transported to jail.
 

 Officer Lee contacted Detective Frank Catalano ("Detective Catalano") and requested a search warrant for Defendant's residence the following day. Detective Catalano's search warrant application sought authorization to destroy any hazardous materials, if found, after the materials were "documented, photographed, and labeled samples obtained for analysis." This request was based on Detective Catalano's sworn search warrant application, which stated:
 

 The Affiant knows that some or all of these chemicals and substances pose a significant health and safety hazard due to their explosive, flammable, carcinogenic, or otherwise toxic nature. Additionally, the affiant knows that the handling of hazardous clandestine laboratory materials without proper expertise, supervision, and facilities has caused, in the past, explosions [,] fires, and other events that have resulted in injuries and severe health problems.
 

 The trial judge authorized the search warrant later that day. Despite Detective Catalano's request for authorization to destroy hazardous materials within the application, the warrant did not contain a destruction order, nor was a destruction order subsequently entered.
 

 *631
 
 The search warrant was executed the same day it was issued. The following items were seized from Defendant's residence: (1) five bottles with a white substance; (2) two bottles with liquid and a white substance; (3) an ice compress; (4) an empty pack of lithium batteries; (5) a Methadone bottle; (6) an allergy medicine pack (commonly referred to as a "blister pack;" and, (7) a cell phone).
 

 Officer Lee testified, based on his training and experience, plastic bottles, such as the ones found on Defendant's property, are commonly used in a method of methamphetamine manufacture known as the "one pot" method. Officer Lee stated a second plastic bottle is used in the "one pot" method, as the hydrochloric gas, or HCL, generator. A white residue is left behind after an HCL generator is used. Officer Lee testified the white residue he observed in the plastic bottles found on Defendant's property was consistent with the typical white residue left behind after an HCL generator is used to manufacture methamphetamine.
 

 Officer Lee testified he searched for Defendant's name on the National Precursor Log Exchange ("NPLEx") database after he left Defendant's residence. NPLEx is a "federal public registry" used to track an individual's pseudoephedrine purchases. He explained pseudoephedrine is "the main ingredient of methamphetamine." NPLEx was established "to make sure that people don't buy more [pseudoephedrine ] than their allowed limits every month."
 

 Officer Lee printed out the log of Defendant's pseudoephedrine purchases from the NPLEx website. The report was offered and admitted into evidence as a business record, over Defendant's hearsay objection. The report indicated Defendant had purchased pseudoephedrine six times at various locations in North Carolina and Tennessee between January and September 2012.
 

 Chip Hughes ("Agent Hughes"), State Bureau of Investigation ("SBI") clandestine laboratory unit site safety officer, arrived on the scene to process the purported methamphetamine lab discovered at Defendant's residence. Agent Hughes testified to the dangers of placing hazardous items seized from a methamphetamine lab into evidence storage, stating:
 

 [E]ven though the bottle itself is no[t] producing gas at that time, if something were to spill on it in the evidence vault, or decay it may still produce gas even though it is in a Ziploc bag or paper bag ... and the gas will leak or build up in those things and expose people to gas or in a case of flammables if they become hazardous, they could ignite.
 

 *632
 
 He further stated the destruction of hazardous materials seized from methamphetamine labs is "a common practice across the state
 
 *345
 
 because ... local agencies don't have the facilities or equipment to ... adequately store these [items] and protect themselves or others."
 

 Mike Piwowar ("Mr. Piwowar"), a forensic scientist with the North Carolina State Crime Lab, was called to Defendant's home after the search warrant was executed to prepare an inventory of possible items used in manufacturing methamphetamine and to take samples back to the lab for analysis. Mr. Piwowar testified the residue in the two plastic bottles recovered from Defendant's trash can both tested positive for an acidic pH. This pH was consistent with residue found inside an HCL generator used to manufacture methamphetamine.
 

 Mr. Piwowar also testified "the bottoms of the [five other] bottles were missing which indicates there was a very strong acid in there that burned the bottoms off." Mr. Piwowar explained this finding was consistent with usage in a methamphetamine lab, because the chemicals used in the methamphetamine manufacturing process are corrosive. Mr. Piwowar stated the other items seized from Defendant's residence were also consistent with items commonly used in manufacturing methamphetamine.
 

 Agent Hughes prepared the items seized, with the exception of the cell phone, for transport and destruction after the bottles were tested for acidic content and subsequent neutralization. On 11 March 2013, a grand jury indicted Defendant for manufacturing methamphetamine, maintaining a dwelling used to keep controlled substances, and possession of an immediate precursor used to manufacture methamphetamine.
 

 B. Defendant's Pre-Trial Motions
 

 A month after the seizure, Defendant filed a motion on 14 November 2012 for preservation of evidence seized. The trial court granted Defendant's motion in open court on 29 November 2012 and entered its order on 6 December 2012.
 

 Defendant also filed a motion for sanctions against the State for destruction of evidence on 12 June 2014, in connection with the items seized pursuant to the search warrant. Defendant alleged his Due Process rights were violated because the State "apparently destroyed the evidence seized without offering Defendant any opportunity to view or test the items," and despite the fact that he had obtained an order to preserve the evidence seized from destruction.
 

 *633
 
 The trial court made the following relevant findings of fact:
 

 11. Investigator Catalano drafted an application for a search warrant for the defendant's residence based upon the information provided to him by Deputy Lee and in such application also requested a destruction order for any hazardous materials.
 

 ....
 

 13. Judge Ginn authorized the search warrant....
 

 ....
 

 16. That despite the request for a destruction order contained within the search warrant application[,] a destruction order was not entered by the Honorable C. Phillip Ginn on October 13, 2012[,] and no subsequent destruction order was ever entered.
 

 17. That with the exception of the cell phone, the destruction process was initiated pursuant to the belief that such a destruction order was actually entered by Judge Ginn on October 13, 2012.
 

 18. That the court is unable based upon all of the evidence presented by both the State and the Defendant to determine the date upon which the items were destroyed.
 

 ....
 

 22. The SBI agents and the officers of the Avery County Sheriff's Department had a good faith belief that the items were to be destroyed and did not act in bad faith when they initiated that destruction process.
 

 23. The Defendant filed a Motion for Order Requiring Preservation of Evidence Seized ... on or about November 14, 2012.
 

 24. That this Motion was filed some 30 days after the destruction of the evidence seized had been initiated by the SBI.
 

 ....
 

 *346
 
 27. That the filed order was served upon the State by letter dated December 10, 2012, the actual date of service
 
 *634
 
 being unknown by the court[,] but the court notes that an envelope admitted into evidence in this case indicates a postmark date of December 21, 2012.
 

 28. HCL generators are not regularly preserved.
 

 29. The only forensic testing done on the bottles seized was to determine whether the contents were acidic. No further testing could have determined what the generators were used for, unless tubing was located therein. There was no tubing found herein.
 

 30. That the parties agree and the court finds that the items seized were destroyed at an unknown date prior to December 17, 2012.
 

 31. That the substances contained in the seven bottles seized represented by their nature significant health and safety hazards in that they are acidic, potentially carcinogenic[,] and potentially toxic.
 

 ....
 

 34. There is no evidence that the seized items were in the possession or control of the State on November 29, 2012[,] the date of the purported preservation order or any date subsequent thereto, and the court finds that these items were not in the possession or control of the State on that date.
 

 Based on the foregoing, the trial court concluded the SBI "had a good faith belief that the items were to be destroyed and did not act in bad faith when they initiated that destruction process." The trial court denied Defendant's motion for sanctions.
 

 C. Defendant's Plea Agreement and Motion to Continue
 

 Defendant's case came on for trial before a jury on 11 August 2014. On 12 August 2014, the State and counsel for Defendant presented their proposed plea agreement to the trial judge. The plea agreement provided for Defendant to enter an
 
 Alford
 
 plea to possession of a methamphetamine precursor and receive a suspended sentence within the presumptive range. The State would dismiss the charges of manufacturing methamphetamine, maintaining a dwelling for controlled substances, and resisting a public officer.
 

 *635
 
 The trial judge began to review the plea transcript with Defendant and asked the attorneys to approach the bench. After an unrecorded bench conference, Defendant told the trial judge he was "not comfortable changing the plea." The trial judge instructed the State to arraign Defendant on all the other charges. The following dialogue occurred between the trial judge, the State, and counsel for Defendant ensued:
 

 MR. RUPP: Mr. Hedrick, how does your client ... plead in 12 CRS 050584, Count 1, Manufacturing Methamphetamine. And Count 3, maintaining a dwelling, or place or vehicle for keeping controlled substances.
 

 MR. HEDRICK: Pleads not guilty to those charges.
 

 MR. RUPP: Does he agree to proceed with the bill of information that we have just submitted to the court?
 

 MR. HEDRICK: On those charges?
 

 MR. RUPP: Yes sir.
 

 MR. HEDRICK: We signed that correct?
 

 THE COURT: Yes.
 

 MR. HEDRICK: Yes.
 

 MR. RUPP: Does he waive any sort of notice or requirements and agree to proceed today to trial?
 

 MR. HEDRICK: My question would be what about the remaining charges?
 

 MR. RUPP: The only charges that are on the information are the manufacturing methamphetamine, the possession of methamphetamine precursor and the maintaining a dwelling.
 

 MR. HEDRICK: My understanding you didn't arraign him on all those to my understanding. [sic]
 

 THE COURT: As far as Count 2, Possession of methamphetamine precursor, how does he plead?
 

 MR. HEDRICK: Pleads not guilty.
 

 THE COURT: The resisting is being dismissed?
 

 MR. RUPP: The resisting is not on the information.
 

 *347
 

 *636
 
 THE COURT: It is on the indictment.
 

 MR. RUPP: I will dismiss the resisting.
 

 THE COURT: All right, go ahead and bring in the jury.
 

 On 18 August 2012, after the State had presented its case for two and one-half days, counsel for Defendant moved for a continuance in order to present the plea transcript and agreement to another court. The trial court denied Defendant's motion, stating "[w]e are too far along." The trial court entered an order on Defendant's motion to continue, in which it made the following findings of fact:
 

 3. That during the plea discussions, neither the State nor counsel for the defendant advised the Court that the plea was an
 
 Alford
 
 plea.
 

 4. That when the [c]ourt was presented the plea transcript in open court, the court discovered that the plea was an
 
 Alford
 
 plea and immediately advised the parties that the court would not accept the
 
 Alford
 
 plea.
 

 5. That the State and the Defendant were given an opportunity to modify the plea arrangement.
 

 6. That thereafter, after discussing the matter with the defendant, counsel for the defendant advised the court that the defendant would not enter a plea of Guilty, whereupon the defendant was arraigned and entered pleas of Not Guilty to all three charges.
 

 7. That upon the rejection of the
 
 Alford
 
 plea by the court, the defendant by and through counsel did not move to continue the case and specifically did not move to continue the case pursuant to the provisions of N.C.G.S. [§ ] 15A-1023(b).
 

 8. Thereafter jury selection began and a jury of twelve and two alternates was empaneled on August 13, 2014, almost 24 hours after the plea was rejected by the court.
 

 9. That at no time during jury selection and at no time prior to the jury being empaneled did the defendant move to continue the case and specifically did not move to continue the case pursuant to the provisions of N.C.G.S. [§ ] 15A-1023(b).
 

 *637
 
 10. Evidence was offered by the State from Wednesday, August 13 through Friday August 15, 2014 and at no time during this period did the defendant move to continue this matter and specifically did not move to continue the case pursuant to the provisions of N.C.G.S. [§ ] 15A-1023(b).
 

 The trial court concluded Defendant "by his silence from the time of the rejection of the plea through jury selection and through approximately 2 ½ days of trial has voluntarily waived his right to a continuance as provided in 15A-1023(b)."
 

 The trial court dismissed the charge of possession of an immediate precursor chemical at the close of all the evidence. The jury returned a verdict finding Defendant guilty of manufacturing methamphetamine and maintaining a dwelling used to keep controlled substances.
 

 The trial court consolidated the convictions and sentenced Defendant to a term of 83 to 112 months imprisonment.
 

 Defendant gave timely notice of appeal to this Court.
 

 II. Issues
 

 Defendant argues the trial court erred by: (1) denying his motion for discovery sanctions; (2) admitting Officer Lee's testimony regarding information he had received from a search on the NPLEx database regarding Defendant's alleged purchases of pseudoephedrine; and, (3) denying his motion to continue after the trial court rejected his plea agreement.
 

 III. Analysis
 

 A. Motion for Sanctions
 

 Defendant argues the trial court erred by denying his motion for discovery sanctions after the State destroyed evidence seized from Defendant's home, without an order authorizing destruction, and despite a court order that the seized evidence be preserved.
 

 1. Standard of Review
 

 "A trial court's imposition of discovery sanctions is within the court's sound discretion and will not be reversed absent a showing of abuse of discretion."
 
 State v.
 

 *348
 

 Shedd,
 

 117 N.C.App. 122
 
 , 124,
 
 450 S.E.2d 13
 
 , 14 (1994) (citation omitted). "An abuse of discretion occurs when the trial court's ruling is so arbitrary that it could not have been the result of a reasoned decision."
 
 State v. Moore,
 

 152 N.C.App. 156
 
 , 161,
 
 566 S.E.2d 713
 
 , 716 (2002) (citations and internal quotation marks omitted).
 

 *638
 

 2. Analysis
 

 Defendant filed a motion for an order requiring preservation of evidence seized from his home upon execution of the search warrant. Defendant contends he sought to preserve the items seized in order to have the opportunity to review the items and for his own witnesses to perform testing.
 

 The Supreme Court of the United States held "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law."
 
 Arizona v. Youngblood,
 

 488 U.S. 51
 
 , 58,
 
 109 S.Ct. 333
 
 , 337,
 
 102 L.Ed.2d 281
 
 , 289 (1988).
 

 In its order denying Defendant's motion for sanctions, the trial court found "the destruction process was initiated pursuant to the belief that such a destruction order was actually entered by Judge Ginn on October 13, 2012." The trial court also noted Defendant's motion for an order requiring the preservation of evidence seized "was filed some 30 days after the destruction of the evidence seized had been initiated by the SBI" and "HCL generators are not regularly preserved."
 

 The record and trial testimony contain ample evidence to support the trial court's conclusion that law enforcement "had a good faith belief that the items were to be destroyed and did not act in bad faith when they initiated that destruction process." Defendant has failed to carry his burden to show the trial court abused its discretion in denying his motion for sanctions. This argument is overruled.
 

 B. Officer Lee's Testimony Regarding the NPLEx Database
 

 Defendant argues the trial court erred by admitting Officer Lee's testimony regarding Defendant's alleged pseudoephedrine purchases and State's Exhibit 9. Defendant asserts the State's Exhibit 9 report was not properly authenticated and was inadmissible hearsay.
 

 1. Standard of Review
 

 This Court reviews a trial court's ruling on the admission of evidence over a party's hearsay objection
 
 de novo.
 

 State v. Miller,
 

 197 N.C.App. 78
 
 , 87-88,
 
 676 S.E.2d 546
 
 , 552,
 
 disc. review denied,
 

 363 N.C. 586
 
 ,
 
 683 S.E.2d 216
 
 (2009). "A trial court's determination as to whether a document has been sufficiently authenticated is reviewed
 
 de novo
 
 on appeal as a question of law."
 
 State v. Crawley,
 

 217 N.C.App. 509
 
 , 515,
 
 719 S.E.2d 632
 
 , 637 (2011) (citation omitted),
 
 disc. review denied,
 
 - -- N.C. ----,
 
 722 S.E.2d 607
 
 (2012).
 

 *639
 
 "Under a
 
 de novo
 
 review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal."
 
 State v. Williams,
 

 362 N.C. 628
 
 , 632-33,
 
 669 S.E.2d 290
 
 , 294 (2008) (citations and internal quotation marks omitted).
 

 2. Analysis
 

 The North Carolina Rules of Evidence defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. Gen.Stat. § 8C-1, Rule 801(c) (2013). Hearsay is generally inadmissible at trial, unless a recognized exception to the hearsay rule applies. N.C. Gen.Stat. § 8C-1, Rule 802 (2013).
 

 "The erroneous admission of hearsay testimony is not always so prejudicial as to require a new trial, and the burden is on the defendant to show prejudice."
 
 State v. Allen,
 

 127 N.C.App. 182
 
 , 186,
 
 488 S.E.2d 294
 
 , 297 (1997) (citations omitted);
 
 see
 
 N.C. Gen.Stat. § 15A-1443(a) (2013). Prejudicial errors occur when there is a reasonable possibility that a different result would have been reached, had the error not been committed.
 
 Allen,
 

 127 N.C.App. at 186
 
 ,
 
 488 S.E.2d at 297
 
 .
 

 N.C. Gen.Stat. § 8C-1, Rule 803(6) establishes an exception to the general exclusion of hearsay for business records. A business record includes:
 

 *349
 
 A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.
 

 N.C. Gen.Stat. § 8C-1, Rule 803(6) (2013).
 

 Our Supreme Court held business records stored on computers are admissible if:
 

 (1)
 

 *640
 
 the computerized entries were made in the regular course of business, (2) at or near the time of the transaction involved, and (3) a proper foundation for such evidence is laid by testimony of a witness who is familiar with the computerized records and the methods under which they were made so as to satisfy the court that the methods, the sources of information, and the time of preparation render such evidence trustworthy.
 

 State v. Springer,
 

 283 N.C. 627
 
 , 636,
 
 197 S.E.2d 530
 
 , 536 (1973). "There is no requirement that the records be authenticated by the person who made them."
 
 Crawley,
 

 217 N.C.App. at 516
 
 ,
 
 719 S.E.2d at 637-38
 
 (citation omitted). "The authenticity of such records may be established by circumstantial evidence."
 
 Id.
 
 at 516,
 
 719 S.E.2d at 637
 
 (citation omitted).
 

 Defendant argues the State failed to lay a proper foundation for admission of the report from the NPLEx database under the business record exception to the hearsay rule. Defendant contends the State was required to present testimony from someone associated with the NPLEx database, or the company responsible for maintaining the database, regarding the methods used to collect, maintain and review the data in the NPLEx database to ensure its accuracy. We disagree.
 

 Officer Lee testified about his knowledge of, and familiarity with, the NPLEx database. He explained: "[Pharmacy employees] are required to long [sic] into the system, CVS for example they scan your ID [and] it goes straight into the system the information does. And then the electronic signature is also put straight into the system."
 

 Officer Lee testified he and other law enforcement officers regularly consult the NPLEx database to look at pseudoephedrine purchases when investigating individuals suspected of manufacturing methamphetamine. During
 
 voir dire,
 
 Officer Lee explained he had attended training sessions on using the NPLEx website. He stated he was unaware of any means or process by which he or any other individual with access to the NPLEx database website could manipulate the electronic data.
 

 Officer Lee thoroughly demonstrated his understanding of the NPLEx database, the method by which the data was gathered, transmitted, and stored, and the underlying basis for the report admitted into evidence. Officer Lee's testimony provided a sufficient foundation for the admission of the computer report from the NPLEx database as a business record.
 
 See
 

 State v. Sneed,
 

 210 N.C.App. 622
 
 , 630-31,
 
 709 S.E.2d 455
 
 , 461 (2011) (holding detective who routinely used the NCIC database in his regular course of business was sufficiently qualified
 
 *641
 
 to lay necessary foundation for admission of NCIC information as a business record).
 

 Presuming the report from the NPLEx database were not admissible under the business record exception to the hearsay rule, admission of the report was harmless error. The State introduced other ample evidence of guilt against Defendant at trial. Defendant's charge of possession of a precursor to methamphetamine, for which the information contained in the report would have been most damaging, was dismissed by the trial court at the close of all the evidence. Defendant has failed to carry his burden to show a different outcome would have resulted
 
 *350
 
 had the report not been admitted into evidence. This argument is overruled.
 

 C. Motion to Continue
 

 Defendant argues the trial court erred by denying his motion to continue after rejecting his plea agreement. We disagree.
 

 1. Standard of Review
 

 "An alleged error in statutory interpretation is an error of law, and thus our standard of review for this question is
 
 de novo.
 
 "
 
 Armstrong v. N.C. State Bd. of Dental Exam'rs,
 

 129 N.C.App. 153
 
 , 156,
 
 499 S.E.2d 462
 
 , 466 (1998) (citations omitted). "Under a
 
 de novo
 
 review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal."
 
 Williams,
 

 362 N.C. at 632-33
 
 ,
 
 669 S.E.2d at 294
 
 (citations and quotation marks omitted).
 

 "Denial of a motion for a continuance, regardless of its nature, is, nevertheless, grounds for a new trial only upon a showing by defendant that the denial was erroneous and that his case was prejudiced thereby."
 
 State v. Searles,
 

 304 N.C. 149
 
 , 153,
 
 282 S.E.2d 430
 
 , 433 (1981).
 

 2. Analysis
 

 Defendant argues he is entitled to a new trial because the trial court denied his motion to continue after it rejected his plea agreement, in violation of his absolute right to a continuance under N.C. Gen.Stat. § 15A-1023(b). We disagree.
 

 N.C. Gen.Stat. § 15A-1023(b) provides:
 

 Before accepting a plea pursuant to a plea arrangement in which the prosecutor has agreed to recommend a particular sentence, the judge must advise the parties whether he approves the arrangement and will dispose of the case accordingly. If the judge rejects the arrangement, he must
 
 *642
 
 so inform the parties, refuse to accept the defendant's plea of guilty or no contest, and advise the defendant personally that neither the State nor the defendant is bound by the rejected arrangement. The judge must advise the parties of the reasons he rejected the arrangement and afford them an opportunity to modify the arrangement accordingly.
 
 Upon rejection of the plea arrangement by the judge the defendant is entitled to a continuance until the next session of court.
 

 N.C. Gen.Stat. § 15A-1023(b) (2013) (emphasis supplied).
 

 This statute gives a defendant an absolute right "to a continuance until the next session of court" if and after the trial court rejects the proposed plea agreement.
 
 Id.; see
 

 State v. Tyndall,
 

 55 N.C.App. 57
 
 , 62-63,
 
 284 S.E.2d 575
 
 , 578 (1981) ("By adding the fourth sentence of G.S. 15A-1023(b), the legislature has clearly granted to the defendant such an absolute right upon rejection of a proposed plea agreement at arraignment."). This Court held the trial court commits prejudicial error and the defendant is entitled to a new trial where the trial court erroneously denies a motion to continue after rejecting the plea agreement.
 

 Id.
 

 Our appellate courts have long recognized "it is a general rule that a defendant may waive the benefit of statutory or constitutional provisions by express consent,
 
 failure to assert it in apt time,
 
 or by conduct inconsistent with a purpose to insist upon it."
 
 State v. Gaiten,
 

 277 N.C. 236
 
 , 239,
 
 176 S.E.2d 778
 
 , 781 (1970) (citations omitted) (emphasis supplied).
 

 Here, Defendant and the State agreed Defendant would enter an
 
 Alford
 
 plea to possessing a precursor chemical and receive a suspended sentence within the presumptive range and be placed on probation. In exchange, the State would dismiss the charges of manufacturing methamphetamine and maintaining a dwelling for controlled substances.
 

 The parties informed the trial court they had agreed to a plea arrangement, prior to jury selection. The trial judge discovered the plea agreement contained allowance for an
 
 Alford
 
 plea upon reviewing the plea transcript in open court. The trial judge advised the parties he would not accept the
 
 Alford
 
 plea and afforded the State and Defendant the opportunity to modify the plea agreement.
 
 See
 
 N.C. Gen.Stat. § 15A-1023(b). Counsel for Defendant advised the trial court Defendant "[was] not comfortable changing
 
 *351
 
 the plea." Defendant failed to move for a continuance.
 
 *643
 
 The trial court advised the State to arraign Defendant on the charges. Defendant pled not guilty and expressly consented to proceed to trial that day. Jury selection began, and Defendant did not move to continue the case prior to the jury being empaneled. The State offered evidence for two and one-half days, and Defendant's trial recessed for the weekend. At no point up to or during this time did Defendant move for a continuance.
 

 The following Monday morning, as the parties entered the second week of trial, counsel for Defendant moved for a continuance pursuant to N.C. Gen.Stat. § 15A-1023(b). The trial court denied Defendant's motion, and the trial resumed.
 

 Defendant's assertion that he had an absolute right to a continuance is a correct interpretation of N.C. Gen.Stat. § 15A-1023(b). The record and trial testimony clearly indicate Defendant voluntarily waived this right by: (1) expressly consenting to being arraigned and proceeding to trial after the trial court rejected the plea agreement; and (2) failing to assert the statutory right until jeopardy attached, during the second week of trial, and after the State presented evidence for two and one-half days. Defendant waived his right to a continuance by his "failure to assert it in apt time."
 
 Gaiten,
 

 277 N.C. at 239
 
 ,
 
 176 S.E.2d at 781
 
 . This argument is overruled.
 

 IV. Conclusion
 

 The trial court determined law enforcement had a good faith belief the evidence seized was supposed to be destroyed. Defendant has failed to carry his burden to show the trial court abused its discretion in denying his motion for discovery sanctions.
 

 Officer Lee testified concerning his knowledge of and familiarity with the NPLEx database. He stated he regularly used the NPLEx database to assist with investigations into methamphetamine manufacturing. The State provided a sufficient foundation to admit the NPLEx database report. The trial court did not err in admitting into evidence the report under the business record exception to the hearsay rule. Defendant has failed to carry his burden to show how admission of the report, if error, would have prejudiced him.
 

 Defendant had an absolute statutory right to a continuance after the trial court rejected his plea agreement. Defendant waived this right by failing to assert it in a timely manner and expressly consenting to proceed to trial the same day the trial court rejected the plea agreement and jeopardy attached.
 

 *644
 
 Defendant received a fair trial free from prejudicial errors he preserved and argued. We find no error in Defendant's conviction nor the judgment entered thereon.
 

 NO ERROR.
 

 Judges McCULLOUGH and DIETZ concur.