McGEE, Chief Judge.
Billy Eugene Pannell ("defendant") appeals from judgment entered upon his convictions of manufacturing methamphetamine and maintaining a dwelling house used for keeping or selling a controlled substance. For the reasons stated herein, we reverse in part and hold no error in part.
I. Background
On 13 October 2014, defendant was indicted for manufacturing methamphetamine in violation of N.C. Gen. Stat. § 90-95(a)(1) and maintaining a dwelling house used for keeping and selling methamphetamine in violation of N.C. Gen. Stat. § 90-108(a)(7).
Defendant's trial commenced at the 27 October 2015 criminal session of Swain County Superior Court, the Honorable J. Thomas Davis presiding. The State's evidence tended to show that Lee Tritt ("Agent Tritt"), an agent with the State Bureau of Investigation, received an alert from the National Precursor Log Exchange system ("NPLEX") on 21 January 2014. Agent Tritt explained that NPLEX was a "system by which we are able to trac[k] pseudoephedrine purchases throughout North Carolina." Agent Tritt was alerted that defendant had purchased pseudoephedrine from a Super Walmart in Sylva, North Carolina. Agent Tritt arrived at the Super Walmart around 3:30 p.m. He was able to identify defendant through a review of a surveillance video and printed photographs. The photographs showed defendant entering a black Dodge vehicle, a vehicle that Agent Tritt knew did not belong to defendant.
Agent Tritt contacted several different investigators in Swain and Jackson Counties in an attempt to locate the black Dodge vehicle. After gaining information from the Swain County Sheriff's Office, Agent Tritt traveled to Bryson City to meet with investigators and then proceeded to Steel House Branch Road. At Steel House Branch Road, Agent Tritt observed a black Dodge Neon parked by the side of the road, matching the description of the vehicle seen at the Super Walmart. Agent Tritt went to a residence located near the vehicle, 51 Smith Drive, and spoke with the mother of Forest Wilson who owned the black Neon.
After speaking with Brian Leopard ("Detective Leopard"), a detective with the Swain County Sheriff's Department, Agent Tritt and other officers proceeded to 24 Rock Hill Drive in Bryson City in search of defendant. Agent Tritt arrived at 24 Rock Hill Drive and noticed that the windows to the residence were open. He noticed a familiar odor that he recognized from his work experience investigating in excess of 500 methamphetamine labs and was concerned that methamphetamine was being produced at that location at that time. Agent Tritt knocked on the front door and defendant answered. Agent Tritt asked defendant if they could talk and defendant said, "yeah, Lee, come on in."
Defendant's girlfriend, Callie Jones, was also in the residence. Agent Tritt asked defendant if they could talk privately and the two walked down a hallway, near an entrance to a bathroom. Agent Tritt asked defendant about the pseudoephedrine and the Coleman fuel he had purchased that day and defendant stated that Callie Jones "had purchased the pseudoephedrine for her mom. For the mom of Mr. Pannell." Agent Tritt testified that he told defendant "we knew that he was going to cook that day and [defendant] then stated that he was going to cook but had thrown the stuff away." By using the term "cook," Agent Tritt explained that they were "[t]alking about producing methamphetamine." Agent Tritt informed defendant that he did not believe him and defendant stated that pseudoephedrine boxes were in the kitchen.
Defendant walked into his kitchen and retrieved a Walmart plastic bag, handing it to Agent Tritt. Inside the bag was an empty box of pseudoephedrine and instant cold packs that had its contents of ammonium nitrate removed. Agent Tritt asked where the pills were and defendant brought him a two-liter plastic bottle from beside a chair next to the kitchen wall. The two-liter plastic bottle contained a pink liquid with a white layer on the bottom of it. Defendant stated that he had not yet mixed the ingredients and that Agent Tritt could "look anywhere and that he had nothing to hid[e]."
Detective Leopard obtained a search warrant for 24 Rock Hill Drive on 22 January 2014. The search warrant resulted in the seizure of the following items, in pertinent part: two empty blister packs, empty box of pseudoephedrine, plastic funnel, Coleman fuel, five water packs from cold packs, two instant cold packs, a two-liter plastic bottle with clear liquid and a white substance, a plastic bottle of Red Crown lye, a plastic bottle with off white material and clear liquid, and a Mountain Dew bottle with a tube coming out of the top with off-white material inside. The items seized were removed from the residence and placed outside. At that time, Miguel Cruz-Quinones ("Mr. Cruz-Quinones"), a forensic chemist for the North Carolina State Crime Laboratory, did some testing and took a sample. After Mr. Cruz-Quinones took his sample, members of the Swain County Sheriff's Office retrieved the items and they were treated or neutralized, packed into five gallon buckets, and transported to a container until they were picked up by a hazardous waste company contracted through the Drug Enforcement Administration ("DEA").
Agent Tritt agreed that defendant had not completed the cooking process in the two-liter bottle found at the residence. Agent Tritt testified that the two-liter bottle appeared to have Coleman fuel and the white, fine substance appeared to be pseudoephedrine pills. Agent Tritt testified that two other bottles found at the residence, a Mountain Dew bottle and Dole bottle, were different. A cook had already occurred in the Dole bottle and there was liquid remaining. The next step in making the final product would have been making a hydrogen chloride gas generator. The Mountain Dew bottle contained the hydrogen chloride gas generator. Agent Tritt explained that once the Dole and Mountain Dew bottles were combined, methamphetamine would form.
Mr. Cruz-Quinones testified that based on the amount of pseudoephedrine present at 24 Rock Hill Drive, a 100 percent theoretical yield would result in approximately 2.2 grams of crystalized methamphetamine. Mr. Cruz-Quinones tested the 27.3 grams of liquid found in the Dole bottle which resulted in a match for the presence of methamphetamine. Mr. Cruz-Quinones testified that the Mountain Dew bottle was consistent with a hydrogen chloride gas generator, "needed during the final stages of methamphetamine production." Mr. Cruz-Quinones opined that 24 Rock Hill Drive was a clandestine laboratory for the manufacturing of methamphetamine.
At the close of the State's evidence, defendant moved to dismiss both charges. Defendant did not present any evidence and renewed his motion to dismiss at the close of all the evidence. The trial court denied both motions.
A jury found defendant guilty of both counts on 30 October 2015. The offenses were consolidated for entry of judgment. Defendant was sentenced as a prior record level III to a term of 96 to 128 months imprisonment. Defendant appeals.
II. Discussion
On appeal, defendant first argues that the trial court erred in denying his motion to dismiss the charge of maintaining a dwelling house used for the keeping and selling of a controlled substance. Specifically, defendant contends that there was insufficient evidence that he kept or maintained the residence located at 24 Rock Hill Drive. We agree.
"The standard of review for a motion to dismiss for insufficient evidence is well settled. [T]he trial court must consider the evidence in the light most favorable to the State, drawing all reasonable inferences in the State's favor." State v. Bradshaw , 366 N.C. 90, 92-93, 728 S.E.2d 345, 347 (2012) (citations and quotation marks omitted).
The question is whether there is substantial evidence (1) of each essential element of the offense charged and (2) that defendant is the perpetrator of the offense. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.... If the evidence is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator of it, the motion to dismiss should be allowed.
State v. Lynch , 327 N.C. 210, 215, 393 S.E.2d 811, 814 (1990) (citations and quotation marks omitted).
N.C. Gen. Stat. § 90-108(a)(7) provides that:
It shall be unlawful for any person: ... (7) To knowingly keep or maintain any store, shop, warehouse, dwelling house, building, vehicle, boat, aircraft, or any place whatever, which is resorted to by persons using controlled substances in violation of this Article for the purpose of using such substances, or which is used for the keeping or selling of the same in violation of this Article[.]
N.C. Gen. Stat. § 90-108(a)(7) (2015).
To determine whether a person keeps or maintains a place under N.C. Gen. Stat. § 90-108(a)(7), the court considers the following factors, none of which are dispositive: "ownership of the property, occupancy of the property, repairs to the property, payment of utilities, payment of repairs, and payment of rent." State v. Baldwin, 161 N.C. App. 382, 393, 588 S.E.2d 497, 506 (2003). The determination depends on the totality of the circumstances. Id. "A pivotal factor is whether there is evidence that defendant owned, leased, maintained, or was otherwise responsible for the premises." State v. Boyd, 177 N.C. App. 165, 174, 628 S.E.2d 796, 804 (2006).
Defendant cites to State v. Harris , 157 N.C. App. 647, 580 S.E.2d 63 (2003), to support his arguments. In Harris , we held that the trial court should have granted the defendant's motion to dismiss the charge of maintaining a place to keep a controlled substance where the defendant was:
seen at the house several times over a period of two months and that an officer had spoken to defendant twice during that time. There is no other evidence linking defendant to the house apart from personal property of defendant found in the bedroom. At most, this evidence supports a finding that defendant occupied the property from time to time although none of defendant's personal papers listed the duplex as defendant's address. The State offered no evidence that defendant owned the property, bore any expense of renting or maintaining the property, or took any other responsibility for the property.
Id. at 652, 580 S.E.2d at 66-67. Accordingly, our Court held that there was insufficient evidence that the defendant kept or maintained the dwelling. Id. at 652-53, 580 S.E.2d at 67.
Here, the evidence that defendant kept or maintained 24 Rock Hill Road is even more deficient than the circumstances found in Harris . The only evidence connecting defendant to 24 Rock Hill Road was his presence at the residence on 21 January 2014. The State did not present evidence that defendant owned the property, made repairs to the property, paid utilities, paid for repairs, or paid rent. Accordingly, we hold that defendant's motion to dismiss the charge of maintaining a dwelling house used for keeping or selling a controlled substance should have been granted. We, therefore, reverse defendant's conviction on the foregoing charge and remand for resentencing.
Next, defendant argues that the trial court erred by denying his pre-trial motion to dismiss which alleged a violation of N.C. Gen. Stat. § 15-11.1. Defendant argues that the search warrant did not authorize the destruction of materials seized from 24 Rock Hill Drive and that the trial court erred by justifying the officers' destruction of the materials by finding that they acted in good faith.
N.C. Gen. Stat. § 15-11.1 provides as follows:
(a) If a law-enforcement officer seizes property pursuant to lawful authority, he shall safely keep the property under the direction of the court or magistrate as long as necessary to assure that the property will be produced at and may be used as evidence in any trial. Upon application by the lawful owner or a person, firm or corporation entitled to possession or upon his own determination, the district attorney may release any property seized pursuant to his lawful authority if he determines that such property is no longer useful or necessary as evidence in a criminal trial[.]
N.C. Gen. Stat. § 15-11.1 (2015).
In State v. Ysut Mlo , 335 N.C. 353, 440 S.E.2d 98 (1994), the North Carolina Supreme Court stated that:
A violation of [ N.C. Gen. Stat. § 15-11.1(a) ] does not, however, mandate dismissal of the charges against defendant. In considering the effect, if any, of the release of this evidence, such inquiry must focus on the question of whether defendant was thereby deprived of his rights to due process under the Fourteenth Amendment to the United States Constitution and Article I, Sections 19 and 23 of the North Carolina Constitution.
....
Defendant in this case has not alleged or demonstrated any bad faith on the part of the police in the release of the automobile, nor does the record reveal any such conduct. The exculpatory value of any tests defendant wished to perform on the automobile was speculative at best. Accordingly, defendant's assignment of error on this issue is without merit.
Ysut Mlo , 335 N.C. at 372-73, 440 S.E.2d at 107-108 (emphasis added).
We find our holding in State v. Hicks , --- N.C. App. ----, 777 S.E.2d 341 (2015) to be instructive on this issue. In Hicks , a search warrant for the defendant's residence was issued. Although a request for authorization to destroy hazardous materials was made within the search warrant application, the warrant did not contain a destruction order, nor was a destruction order subsequently ordered. Id. at ----, 777 S.E.2d at 344. The evidence obtained was eventually destroyed and the trial court found that officers had acted pursuant to a belief that a destruction order was entered and a "good faith belief that the items were to be destroyed and did not act in bad faith when they initiated that destruction process." Id. at ----, 777 S.E.2d at 345. Our Court stated that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." Id. at ----, 777 S.E.2d at 348 (citing Arizona v. Youngblood , 488 U.S. 51, 58, 102 L.Ed. 2d 281, 289 (1988) ).
In the present case, after items were seized from 24 Rock Hill Drive pursuant to a search warrant, the items were photographed, inventoried, and analyzed. After testing, they were collected and taken to a DEA certified container in Sylva. After four months, they were removed by a DEA contractor and destroyed by the contractor. The search warrant application dated 22 January 2014 requested authorization to destroy hazardous materials:
The Affiant knows that some or all of these chemicals and substances pose a significant Health and safety hazard due to their explosive, flammable, carcinogenic, or otherwise toxic nature. Additionally, the affiant knows that the handling of hazardous clandestine laboratory materials without proper expertise, supervision, and facilities has caused, in the past, explosions, fires, and other events that have resulted in injuries and severe health problems. Based on these facts, and because there are presently no adequate safe methods of transportation and storage of hazardous waste, the affiant requests authorization to destroy these materials in the event of their discovery, after such materials are documented, photographed, and labeled samples obtained for analysis.
The trial court found, in a 29 October 2015 order denying defendant's pre-trial motion to dismiss, as follows:
9. Judge Letts did not issue a specific destruction order for the materials seized pursuant to the warrant nor was such an order later entered. The officers executing the warrant, however, were under the erroneous belief and understanding that such authorization was given as a result of the destruction request made in the warrant. It has been and is the custom and practice of law enforcement in the execution of search warrants resulting in the collection of materials used in the manufacture of methamphetamine to attempt to neutralize the materials and then destroy the materials due to their hazardous nature, inability to preserve and store the items safely and properly for evidentiary purposes, and to prevent injury from the materials.
10. The officers in the execution of the search warrant and in collecting the materials had a good faith belief that the items were to be destroyed pursuant to Court authorization, and did not act in bad faith when they proceeded with the destruction process and had the collected materials destroyed.
(emphasis added).
We reiterate that a violation of N.C. Gen. Stat. § 15-11.1(a) does not mandate dismissal of defendant's charges. Moreover, because defendant has not alleged or demonstrated any bad faith on behalf of the officers in the destruction of the items seized from the search warrant, nor does the record reveal such conduct, we are unable to hold that defendant's argument has merit. In conclusion, we hold that the trial court did not err by denying defendant's pre-trial motion to dismiss.
III. Conclusion
We reverse defendant's conviction for maintaining a dwelling house used for keeping or selling a controlled substance. We also hold that the trial court did not err by denying defendant's pre-trial motion to dismiss.
REVERSED AND REMANDED FOR RESENTENCING IN PART; NO ERROR IN PART.
Report per Rule 30(e).
Judges McCULLOUGH and DAVIS concur.
Judge McCullough concurred in this opinion prior to 24 April 2017.