UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Decker, Malveaux and Senior Judge Clements
Argued at Richmond, Virginia


NORMAN MICHAEL ROBERTS

MEMORANDUM OPINION* BY

v.        Record No. 1535-16-2        JUDGE JEAN HARRISON CLEMENTS
                                      NOVEMBER 7, 2017

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF SPOTSYLVANIA COUNTY
Daniel T. Balfour, Judge Designate

Joseph E. Hicks for appellant.

Christopher P. Schandevel, Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


A jury convicted appellant of manufacturing methamphetamine and conspiracy to

manufacture methamphetamine and fixed his sentence at a total of thirty years in prison.

Appellant argues on appeal that the trial court erred in admitting records from the National

Precursor Log Exchange (NPLEx) that showed the purchases and attempted purchases of

pseudoephedrine made by appellant and four other persons who lived in the same house with

appellant.[1]  Appellant contends the records were not admissible under the business records

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The trial court, noting that the records were required by statute to be maintained, admitted them under the business records exception to the hearsay rule.  Code §§ 18.2-265.6 – 18.2-2-265.18 concern the sale of ephedrine or related compounds and are based on federal law, the Combat Methamphetamine Epidemic Act of 2005.  Code § 18.2-265.8 requires the Virginia State Police to enter "a memorandum of understanding with an appropriate entity to establish the Commonwealth's participation in a real-time electronic record keeping and monitoring system for the sale of ephedrine or related compounds."  The statute provides that the system be approved by the State Police and directs the State Police to draft regulations for implementation of the statute.  Regulation 19 VAC 30-220-10 states that the "Virginia Methamphetamine Precursor Information System is a web-accessed database" that is available to pharmacies and

exception to the hearsay rule because the testimony of the investigating detective was not sufficient to authenticate them. We assume without deciding that the records were not admissible but find that the error was harmless given the other overwhelming evidence in the case that established appellant's guilt.

The evidence, viewed in the light most favorable to the Commonwealth, which prevailed below, see Whitfield v. Commonwealth, 265 Va. 358, 361, 576 S.E.2d 463, 465 (2003), established that in April 2015, Detective James Wright of the Spotsylvania County Sheriff's Office received a tip from an informant that persons living at a house in the county were manufacturing methamphetamine. After corroborating the information in the tip, Wright began surveillance of the property, using a high-powered pair of binoculars and a camera with a large telephoto lens. Wright observed numerous persons, including appellant, walking around the outside of the house and walking between the house and a detached garage. The informant had reported that most of the methamphetamine was cooked in the garage. Wright once saw appellant with a green plastic bottle in his hand, which he swung back and forth as he walked in the yard. Wright testified that such a swinging action was consistent with manufacturing methamphetamine by the "one-pot" or "shake-and-bake" method. Deputy Ray Haney also saw appellant shaking a bottle in his hand as he paced in the yard.

---

retailers and can be viewed by law enforcement officers, but neither the statute nor the regulation expressly refer to NPLEx, which is a privately managed entity used by many states to track purchases of regulated substances. For example, North Carolina Code § 90-113.52A refers to NPLEx as the records system to be used.

Other jurisdictions have held an affidavit from the custodian of the NPLEx records was sufficient to admit the records as business records. See, e.g., Morrill v. State, 184 So. 3d 541, 548-49 (Fla. Dist. Ct. App. 2015); Embrey v. State, 989 N.E.2d 1260, 1267 (Ind. Ct. App. 2013). In State v. Hicks, 777 S.E.2d 341, 349 (N.C. App. 2015), the testimony of the investigating law enforcement officer was found sufficient to admit NPLEx records as business records, but prior case law had established that a foundation to admit computerized records could be laid by testimony from a witness familiar with the records, and the court also determined any error was harmless because there was "other ample evidence of guilt."

Wright later checked the names of appellant and other persons who lived in the house against the NPLEx database, which is used to track purchases of pseudoephedrine in real time. Wright testified that purchasers are required to show a photo identification and sign a log at the pharmacy where the purchase is being made. A person may buy three and six tenths grams each day or nine grams during a thirty-day period without a valid prescription, and when that limit is reached, further purchases are blocked until the next time period begins. Wright learned from the database that appellant and the other four persons living in the house had made numerous purchases and attempted purchases at pharmacies in the area between August 25, 2014 and June 30, 2015. As a registered user of NPLEx, Wright set up "alerts" to be notified by email when appellant or the other persons tried to buy pseudoephedrine, and he received two alerts during his investigation.

A search warrant was executed on the property on May 20, 2015. The police found items in the house and yard that were consistent with the use and manufacture of methamphetamine, including bottles of starter fluid, cold packs, lithium batteries, coffee filters, and empty packages of pseudoephedrine. A soda bottle containing a white crystalline substance that appeared to be the remnants of a "meth cook" was found under a window in the rear of the garage. Appellant admitted to Wright that he had smoked methamphetamine "in the past," but he denied making methamphetamine and claimed he had "no idea that [his housemates] were cooking meth in the garage."

After forensic analysis confirmed that two items seized from the property tested positive for methamphetamine and pseudoephedrine, Wright obtained arrest warrants for appellant and the other occupants and returned to the property on August 14, 2015. Appellant consented to a search of his bedroom. Wright discovered pieces of foil, which is used to store methamphetamine, and pieces of cut straw, which is used to ingest the substance, strewn around

the room and in a purse that appeared to belong to appellant's girlfriend. In appellant's dresser, Wright located two-liter drink bottles, aluminum foil, a can of starter fluid, and a small blender that was covered in a white powder residue that appeared to be pseudoephedrine. Wright testified that these items were used to make methamphetamine.

Appellant made telephone calls from jail after his arrest, and recordings of three of the calls were played at trial. In one call to his girlfriend, appellant admitted buying methamphetamine from a neighbor but denied manufacturing it. In another call, appellant told his girlfriend he was glad she had not been involved in the offense because she did not have any photo identification and that he and the others were caught because they were "buyin' 'em and buyin' 'em and buyin' 'em." Appellant again claimed he had not "cooked" methamphetamine, but said he "knew what was going on" and "was getting high or whatever." In a third call to a female friend, appellant said he had thrown his life away "for basically nothing," and acknowledged he should not "go back to culinary arts" in the future. He also said he should get a lower charge because there was "only like 80 grams . . . in the soda bottle."

One of the persons who lived at the house with appellant testified for the Commonwealth at trial. Aaron Webb said appellant was the only person in the house who knew how to make methamphetamine and that the drug was present in the house "[e]verywhere and all the time." Webb said he had purchased pseudoephedrine from pharmacies for appellant in exchange for methamphetamine. Webb acknowledged he had been charged for his participation in the scheme and said he hoped to benefit from testifying for the Commonwealth. He further said no promises had been made to him and that "it would not be very good for [him] at all" if he failed to testify truthfully.

Appellant testified at trial that he knew drugs were being used at the house, but he denied manufacturing or selling methamphetamine. He also denied purchasing pseudoephedrine and

- 4 -

claimed the purchases and attempted purchases attributed to him on the NPLEx records had been made by someone using his identification, which he said had been stolen from him sometime after August 25, 2014. He said he used the cold packs found in his bedroom to cool his drinks and that the other items found in the dresser were his girlfriend's. Appellant acknowledged that he had fourteen prior felony convictions.

"The doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available.'" Commonwealth v. Swann, 290 Va. 194, 196, 201, 776 S.E.2d 265, 267, 270 (2015) (quoting McGhee v. Commonwealth, 280 Va. 620, 626 n.4, 701 S.E.2d 58, 61 n.4 (2010)); accord Commonwealth v. White, 293 Va. 411, 419, 799 S.E.2d 494, 498 (2017). Thus, assuming without deciding that the NPLEx records should not have been admitted, we find the error was harmless. See Code § 8.01-678. The standard for non-constitutional error applies because the issue at hand is whether the evidence was admissible. Under that standard, the question is whether appellant had "a fair trial on the merits" and "substantial justice" was reached. Clay v. Commonwealth, 262 Va. 253, 259, 546 S.E.2d 728, 731 (2001). The alleged error is harmless if it did not "substantially influence[]" the finder of fact. Id.; accord Ramsey v. Commonwealth, 63 Va. App. 341, 356, 757 S.E.2d 576, 584 (2014).

Whether an error was harmless must be considered "in the context of the entire case." Montgomery v. Commonwealth, 56 Va. App. 695, 704, 696 S.E.2d 261, 265 (2010). A finding of guilt in this case was not dependent upon the evidence contained in the NPLEx records. The Commonwealth presented evidence that appellant was seen walking in the yard of the residence while shaking a plastic bottle, a known process for manufacturing methamphetamine by the "one-pot" or "shake-and-bake" method. Numerous items used in making methamphetamine were discovered in the yard of the residence and in appellant's bedroom. One of appellant's housemates testified he purchased pseudoephedrine for appellant and that appellant was the only

- 5 -

person in the house who knew how to make methamphetamine, which was present in the house "[e]verywhere and all the time." The incriminating statements appellant made in recorded telephone calls from the jail after his arrest were played at trial. Appellant said in one conversation that he and the others had been caught because they were frequently buying numerous boxes of pseudoephedrine. In another conversation appellant said he should get a lower charge because there was "only like 80 grams . . . in the soda bottle" and that he should not "go back to culinary arts" in the future.

Furthermore, appellant testified he knew there were drugs in the house but he denied using drugs and making methamphetamine. He also asserted at trial that his identification had been stolen and someone had used it to purchase pseudoephedrine. The jury was entitled to accept or reject his testimony and to conclude that he lied to conceal his guilt. See Flanagan v. Commonwealth, 58 Va. App. 681, 702, 714 S.E.2d 212, 222 (2011).

The totality of the evidence overwhelmingly established appellant's guilt. See White, 293 Va. at 424, 799 S.E.2d at 501 (holding any error in denying defendant's motion to suppress was harmless as a matter of law because the uncontested evidence demonstrated beyond a reasonable doubt that a rational juror would have found defendant guilty without the disputed evidence, as the evidence had a limited role at trial and the other evidence in the case was overwhelming). Because appellant had "a fair trial on the merits" and "substantial justice" was reached, any error was harmless. Clay, 262 Va. at 259, 546 S.E.2d at 731; accord Burnette v. Commonwealth, 60 Va. App. 462, 481 n.4, 729 S.E.2d 740, 749 n.4 (2012).

For these reasons, we affirm appellant's convictions.

Affirmed.